IN RE GUARDIANSHIP OF CLARA M. CASS. CLARA M. CASS, APPELLEE, V. FORREST PENSE ET AL., APPELLANTS.

54 N. W. 2d 68

Filed June 6, 1952. No. 33167.

*Charles F. Adams,* for appellants.

*Edgerton & Powell,* for appellee.

*Chas. L. Whitney,* Guardian Ad Litem.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is a proceeding to subject the property and person of Clara M. Cass to guardianship for the reason, as alleged, that she is physically incapable and mentally incompetent to manage her property and care for herself.

The petition for the appointment of a guardian for appellee was made by appellants, nephew and niece respectively, of appellee. It is alleged therein that: Appellee, a resident of Hamilton County and the owner of real and personal property, is 81 years of age, is in ill health mentally and physically, and because thereof is unable to care for herself or to manage her property. The next of kin and heir presumptive of appellee is Aleeta Clare Cass, a granddaughter. Nellie M. Phelps had been, for a year, living in the home of appellee and had been her housekeeper and nurse. Appellants asked that the court appoint Frank M. Farr or some other suitable person as guardian.

Appellee denied the allegations of the petition, alleged she was not an idiot, a lunatic, or mentally incompetent, but by reason of physical disability she deemed herself unfit to manage her estate with prudence and understanding. She asked the court to appoint Maurice Miller,

who had acted as her agent for about five years, as conservator of her estate as permitted by the law of Nebraska.

The county court found that appellee was not an idiot, a lunatic, or insane, but that she was by reason of long-continued, severe ill health and advanced age, mentally and physically incompetent to have charge of her estate and to manage her property, and it was necessary that a guardian be appointed for her person and her estate. The application for the appointment of a conservator was denied and a guardian was appointed.

The district court heard the matter on appeal from the judgment of the county court and found that appellee was feeble of body and physically incapable of managing her estate, but that she was not an idiot, a lunatic, or mentally incompetent, and that a conservator rather than a guardian should be appointed for her estate. The judgment of the county court was reversed and it was directed to appoint Maurice Miller as conservator of the estate of appellee and to require him to furnish bond of $20,000, conditioned as provided by law, subject to the right of that court to change the amount of the bond if and when a future condition justified it. The motion of appellants for a new trial was denied.

The parties disagree as to the manner of the disposition of this appeal in this court. A proceeding for the appointment of a guardian is a probate matter. In re Guardianship of Hergenrother, 141 Neb. 858, 5 N. W. 2d 118. Commencing with August 27, 1949, all appeals in probate matters from the county court to the district court, except appeals from the probate or denial of probate of wills and appeals from the allowance or disallowance of claims filed against an estate, have been triable in district court as suits in equity are conducted, and appeals to this court from the district court in such matters are heard and determined de novo. §§ 25-1105, 25-1925, R. R. S. 1943, § 30-1606, R. S. Supp., 1951; In re Estate of Bergren, 154 Neb. 289, 47 N. W. 2d 582.

It is the duty of this court to determine the facts from the record without regard to the findings and conclusions of the district court.

The record establishes that appellee is a widow 81 years of age and a resident of the city of Aurora. Her husband died in 1945. She had one child, a son. He died and left surviving him one daughter, Aleeta Clare Cass, a minor resident of Kansas. Appellee is the owner in fee of 80 acres of land in Clay County and 240 acres of land in Hamilton County. She has a life estate in 400 acres of land in Hamilton County, the home residence property in Aurora, and a building in the retail business district of Aurora. Her personal property consists of household goods, about $12,000 cash, bank certificates of deposit of about $3,000, checking accounts in two local banks, and a small amount of stock of the banks. The Clay County land has been rented by her to her nephew Forrest Pense. Since the death of her husband she has employed Maurice Miller as her agent and he has managed the other land for her. He has transacted all of the business in reference to that land. He was a tenant and resided on a part of the land at the time of the death of Mr. Cass. There is no evidence that appellee has not been provident in her business matters; that her agent has not been honest, faithful, and efficient; or that she has lost or been deprived of any income to which she was entitled. There is no proof that she has improperly expended any amount of money or encumbered or disposed of any of the property. It is not claimed that she has been taken advantage of in any transaction.

Appellee 4 or 5 years before the trial in district court suffered a cerebral accident referred to in the record as a "stroke." It disabled her and she was cared for in her home. On the 17th day of February 1951, she suffered a second cerebral accident. She was immediately taken to, and has since been confined in, a hospital in Aurora. She is bedfast and is physically incapacitated.

The evidence does not establish that appellee is mentally incompetent but preponderates in support of the conclusion that she is not.

It is not claimed by appellants that appellee is insane. It is only alleged that she is physically and mentally incapable of caring for herself, her property, and business affairs by reason of ill health. The statute contemplates the appointment of a guardian for "any mentally ill person or * * * any person who * * * is mentally incompetent to have the charge and management of his property * * *." § 38-201, R. S. Supp., 1951. The power to appoint a guardian for an adult person depends upon statute and unless the requisites thereof are shown to exist the court cannot act favorably to the appointment. In statutory requisites for the appointment of a guardian for an adult person insanity is one consideration and mental incompetency, by reason of old age or other cause to have the charge and management of property, is another.

It is inevitable that if life is prolonged to old age the advance of the years will be marked by greater or less decrease of bodily powers and mental efficiency. But generally if that course be normal, if it be such only as attends age unaffected by abnormal brain conditions, there will not be mental incompetency within the meaning of the law and nothing to justify a court in depriving a person involuntarily of the control of his property. The purpose of a guardianship of this kind has reference to the preservation of the property of the ward and any assistance he may personally require. The mere fact that he manifests the weakness, forgetfulness, and normal characteristics of age is quite immaterial unless his debility has reached the stage where he cannot manage or intelligently direct the management of his affairs and his estate is liable to suffer material loss or waste for want of a responsible person in charge.

A guardian should not be appointed either of the person or property of an adult simply because he is

aged or infirm or because his mind is to some extent impaired by age or disease. On the other hand the object of the statute under which this proceeding is brought is primarily the protection of property and if one does not possess sufficient mentality to understand in a reasonable manner the business he is transacting, or the nature and effect of his acts with reference to business affairs, or if he has lost his reasoning powers to such an extent that he is incapable of understanding or acting with ordinary discretion in common affairs and his property has thus become subject to loss or waste, then a guardian should be appointed to manage his affairs. The term mentally incompetent as used in the statute does not refer to a person who is sane but not as wise, intelligent, or mentally strong as some other person. It applies to the person whose mind is so affected as to have lost control of itself to such a degree as to deprive the person affected of sane and normal action. Obviously no general rule can be stated on this subject. Each case must be determined upon its particular facts. Keiser v. Keiser, 113 Neb. 645, 204 N. W. 394; In re Guardianship of Blochowitz, 135 Neb. 163, 280 N. W. 438; In re Johnson's Estate, 286 Mich. 213, 281 N. W. 597; In re Guardianship of Warner, 232 Wis. 467, 287 N. W. 803; In re Guardianship of Olson, 236 Wis. 301, 295 N. W. 24; Annotations, 17 A. L. R. 1065, 113 A. L. R. 354; 25 Am. Jur., Guardian and Ward, § 19, p. 19. The evidence is insufficient to show that appellee was mentally incompetent to have charge and management of her property, and the district court properly refused to subject her property and person to guardianship.

Prior to the intervention of the Legislature in 1947 a guardian for an adult person, not a veteran, could only be appointed if he was a spendthrift, insane, or mentally incompetent to have the charge and management of his property. If he was incapacitated by the infirmities of years or physical disability the court had

no jurisdiction on his application or otherwise to preserve or protect his estate. The act of 1947 is for the benefit of the adult who is not a spendthrift, insane, or mentally incompetent but who considers "himself unfit by reason of infirmities of age or physical disability to manage his estate * * *." He may apply to the court for a conservator and the court may appoint a suitable person or a qualified corporation as conservator of his estate. C. 38, a. 9, R. S. Supp., 1951. In 25 Am. Jur., Guardian and Ward, § 21, p. 20, it is said: "In several states statutes authorize a person who, although of sound mind, believes he is incapable of managing his own estate or of caring for his own property to apply for, request, or consent to the appointment of a conservator of his estate, who, when appointed, possesses over the estate substantially the same powers and is subject in regard thereto to substantially the same duties as a guardian of an incompetent. It is said that an application for the appointment of a conservator of the petitioner's estate is only a voluntary application for a guardian with limited powers, dignified under the law by another name * * *." See, also, Hogan's Appeal, 135 Me. 249, 194 A. 854, 113 A. L. R. 350.

The fact that appellee was not mentally incompetent to have the charge and management of her property, that she made application for the appointment of a conservator of her estate as the statute permits, and the incidence of her physical incapacity entitled her to the benefit of the statute. It is not shown that Maurice Miller was disqualified or unsuitable to be conservator of the estate of appellee and he was properly selected to perform the trust.

Appellee by cross-appeal contests the authority of the county court to appoint and the power of the district court to continue the services of a guardian ad litem for Aleeta Clare Cass. a minor, the granddaughter and sole heir presumptive of appellee, and the right of the district court to assess compensation for the services

of the guardian ad litem against the estate of appellee. The granddaugter was named in the petition and it asked that the court cause notice to be given to her of the pendency of the proceeding and of the date of the hearing. This was done.

The county court appointed Chas. L. Whitney, Jr., as guardian ad litem for Aleeta Clare Cass. She by pleading in the district court set forth that she was about 18 years of age; that her interest and welfare in the matters involved in the proceeding were identical with that of her grandmother, the appellee; that she desired F. E. Edgerton, the attorney for her grandmother and her attorney, to appear and act for her in the pending matter; and she asked that the court show on the record of the case that she was represented by Mr. Edgerton and not by Mr. Whitney. Her pleading was, on motion of appellants, stricken from the record because the court found that the interest of Aleeta Clare Cass might conflict with the interest of appellee who was represented by Mr. Edgerton; that it would be improper for him to appear for the granddaughter "in this case because of said conflict of interests"; that the appointment of Chas. L. Whitney, Jr., as guardian ad litem by the county court was proper in all respects; and that he should be and was retained and continued as guardian ad litem for the granddaughter. The district court allowed $60 as compensation for the services of the guardian ad litem in the county court and district court and ordered it be paid by the conservator, upon his qualification, from the estate of appellee.

The position of appellee is that the statutes regulating practice in the probate court do not require the appointment of a guardian ad litem for a minor interested in a matter pending in that court; that the granddaughter had no legal interest in this matter; that she had not been impleaded therein; that the appointment and continuance of a guardian ad litem for her were improper and without authority of law; and that in any event

she had a right to be represented, if she had a legal interest in the matter in controversy, by the attorney of her choice and designation as her next friend. The granddaughter is the nearest relative and heir presumptive of appellee and she therefore has a legal interest in appellee and her estate. § 38-201, R. S. Supp., 1951. In Tierney v. Tierney, 81 Neb. 193, 115 N. W. 764, the court said: "The legislature has expressly declared the next of kin and the heirs apparent or presumptive to have an interest in the estate of an incompetent person. It is very apparent that the next of kin have as great an interest in the property and estate of an incompetent person before he has been declared such as they have thereafter. While the interest of heirs apparent is not vested, yet their right to protect the same is a present and existing one. * * * It is the policy of our law that the heirs apparent or presumptive and those dependent upon an incompetent person have an interest in him and in his property, and that they are proper parties to any proceedings affecting him or his property." See, also, Prante v. Lompe, 77 Neb. 377, 109 N. W. 496; Hall v. Hall, 123 Neb. 280, 242 N. W. 607.

The practice in this state intends that a minor interested in a matter in litigation may and generally should be represented by a guardian ad litem or a next friend. §§ 25-307, 25-309, 30-1603, R. R. S. 1943, § 38-114, R. S. 1943. The distinctions between the functions of a guardian ad litem and of a next friend have all but been completely removed by the development in procedure. See Schade v. Connor, 84 Neb. 51, 120 N. W. 1012. The right of the probate court to appoint a guardian ad litem to represent the minor granddaughter seems to be recognized and within the contemplation of the statute. § 38-114, R. S. 1943. The statute providing for appeals in matters of probate jurisdiction lends support to this view because it provides that "Every party so appealing shall give bond * * *. But an executor, administrator, guardian or guardian ad litem shall not be re-

quired to enter into bond * * *." § 30-1603, R. R. S. 1943. This section is applicable to and controls an appeal in proceedings for the appointment of a guardian. In re Guardianship of Hergenrother, *supra*.

The findings of the district court are adopted and made the findings of this court in this case. The compensation of Chas. L. Whitney, Jr., as guardian ad litem for services in this matter in all courts (including the $60 allowed by the district court), should be and is fixed at the sum of $250, and shall be paid by the conservator from the estate of appellee. The judgment of the district court should be and it is affirmed.

AFFIRMED.