IN RE GUARDIANSHIP OF JAMES M. HYDE, INCOMPETENT. JAMES M. HYDE, APPELLANT, v. CHARLOTTE I. CROCKER ET AL., APPELLEES.

176 N.W. 2d 234

Filed April 10, 1970. No. 37461.

Thomas O. David, for appellant.

Leo F. Clinch, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an appeal from an order of the district court sustaining a finding by the county court of Loup County that the appellant was mentally incompetent and incapable of having the charge and management of his person and property, and appointing a guardian for him.

In June of 1963, appellant, who had been a very successful rancher, suffered a paralytic stroke. On February 4, 1964, appellant agreed to the appointment of a conservator for his property. Appellant on three occasions thereafter filed applications to have the conserva-

torship dissolved. Two of them were dismissed on his application and the conservatorship was continued until September 16, 1968. Appellant's real and personal property is now of the approximate value of $250,000. His principal asset is a 3,088-acre ranch in. Loup County, Nebraska, which in recent years has been leased to his sister. His income during the conservatorship averaged between 11 and 12 thousand dollars a year before expenses. Appellant, who is 73 years of age, is now retired from ranching, lives alone at his ranch home, drives an automobile, and is ambulatory except for some restriction in the use of one leg and one arm as the result of the stroke.

The petitioners, who are the appellees herein, are the appellant's children. During the year 1964, and subsequent to the appointment of the conservator, appellant secured a divorce from his wife. A property settlement between the parties was approved by the Loup County district court.

On August 1, 1967, appellant filed the second application for the dismissal of the conservatorship. This was set for hearing on August 23. On August 15, appellant's children filed the petition for the appointment of a guardian, and that hearing was set for September 20, 1967. On September 2, 1967, appellant dismissed his application for termination of the conservatorship, and no hearing was had on the guardianship petition. Again, on July 23, 1968, appellant filed an application for the dismissal of the conservatorship. This was set for hearing September 16, 1968. On September 11, 1968, the county court ordered that the petition for the appointment of the guardian, filed August 15, 1967, also be heard on September 16, 1968. After hearing on both applications, the county court ordered the conservatorship terminated and appointed a guardian. Pending appeal, a special guardian was appointed to conserve the property. The hearing on the guardianship in the

district court was held on June 30, July 1, and July 9, 1969.

It will serve no useful purpose herein to detail much of the evidence of the petitioners. Most of it concerns the actions of the appellant during the years 1963, 1964, and 1965. For the purposes of this record we can concede that at that time the appointment of the conservator was to the best interest of the appellant.

From December 12, 1963, to January 2, 1964, appellant was under the care of Doctor Charles Landgraf, a specialist in neurology and psychiatry. At that time, his diagnosis was: "* * * he suffered from a cronic (chronic) brain syndrome associated with circulatory disturbance, cerebral vessel thrombosis, manifested by left spastic hemiparesis, impaired judgment, paranoid delusions and irritability." Doctor Landgraf testified at the trial but had no contact with the appellant after January 2, 1964. Basing his opinion on his examination in December 1963, the testimony as to appellant's conduct in 1964 and 1965, an examination of five psychological tests referred to hereafter, and the deposition of Doctor William F. Giles, appellant's psychiatrist, Doctor Landgraf testified that appellant was personally incapable of handling his property.

Relations between the appellant and the petitioners were more or less strained after the conservatorship proceedings. Petitioners rarely visited appellant after 1964. Appellant's witnesses were relatives or neighbors who testified to many contacts with him over the period of the conservatorship and to the date of the hearing in district court. One of appellant's witnesses was a lawyer maintaining an office in Broken Bow. This witness considered appellant sufficiently competent in 1967 to draw a will for him.

A proceeding for the appointment of a guardian is a probate matter. In re Guardianship of Hergenrother, 141 Neb. 858, 5 N. W. 2d 118. An appeal in a guardianship matter from the county court to the district court

is triable in the district court as a suit in equity, and on appeal to this court from the district court is heard and determined de novo. Cass v. Pense, 155 Neb. 792, 54 N. W. 2d 68.

Section 38-201, R. R. S. 1943, provides a guardian may be appointed for any mentally ill person or for any person who by reason of extreme old age or other cause is mentally incompetent to have the charge and management of his property. The power to appoint a guardian depends upon the statute, and the requisites must be shown to exist before the court can appoint a guardian. It is not claimed that appellant is mentally ill, but rather that he is incapable and mentally incompetent to have the charge and management of his person and property.

There is no question the appellant at 73 is not as capable as he was in his younger years. It is inevitable that the advance of years will be marked by a greater or lesser decrease of body powers and mental efficiency, and this is particularly true when accompanied by disease, or, as in this case, a paralytic stroke. As we said in Cass v. Pense, 155 Neb. 792, 54 N. W. 2d 68: "A guardian should not be appointed either of the person or property of an adult simply because he is aged or infirm or because his mind is to some extent impaired by age or disease. On the other hand the object of the statute under which this proceeding is brought is primarily the protection of property and if one does not possess sufficient mentality to understand in a reasonable manner the business he is transacting, or the nature and effect of his acts with reference to business affairs, or if he has lost his reasoning powers to such an extent that he is incapable of understanding or acting with ordinary discretion in common affairs and his property has thus become subject to loss or waste, then a guardian should be appointed to manage his affairs. The term mentally incompetent as used in the statute (section 38-201, R. R. S. 1943) does not refer to a person who

is sane but not as wise, intelligent, or mentally strong as some other person. It applies to the person whose mind is so affected as to have lost control of itself to such a degree as to deprive the person affected of sane and normal action. Obviously no general rule can be stated on this subject. Each case must be determined upon its particular facts."

Is the appellant mentally incompetent within the rule set out above? We conclude that the evidence in this record is wholly insufficient to so find. We are not determining his competency as of 1963, 1964, or 1965, the periods to which the evidence of the petitioners mostly relates. The petition for guardianship was not filed until August 1967, and was permitted to pend for more than a year. We are here concerned with his competency in 1968, at the time of the hearing in county court, and in 1969, when the hearing was held in the district court.

Appellant produced the evidence of Doctor William F. Giles, a psychiatrist practicing that specialty at Omaha, Nebraska, and a series of psychological tests made by a psychologist, H. Dale Goodrow, at the direction of Doctor Giles. These tests and Doctor Giles' observations were made over a period of a week, from May 2 to May 9, 1969, during which period the appellant was hospitalized for the specific purpose of evaluating his mental condition. The tests revealed that appellant is in the average range of mental acuity for his age, and had no severe psychological disturbance. The psychologist's conclusion was that appellant was quite capable of handling himself in his social environment.

Doctor Giles found appellant to be a person of normal intelligence, with a physical handicap which he handled quite well. He did not consider appellant a paranoid personality, but thinks he has always had a suspicious nature. He found appellant's recent memory to be very good. Doctor Giles concurred in the conclusion of the psychologist that appellant had no severe

disturbance and handled himself well in his social environment. It was his opinion that mentally, appellant had good judgment and could handle his personal and financial affairs without the guardianship. He definitely was of the opinion that appellant did not need a guardian, and felt the guardianship had been detrimental to the appellant emotionally and if removed he would not only be happier but able to function better.

On this record it cannot be said that appellant is mentally incompetent. His mind is not so affected as to deprive him of sane and normal action. Petitioners have not met their burden of proving appellant incapable of having charge of his person and property. The judgment of the trial court is reversed, and the cause is remanded with directions to dismiss the proceedings.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.