*In re* ESTATE OF DELLA McPEAK, Alleged Incompetent.—(DELLA McPEAK, Respondent-Appellant, *v.* WALTER C. McPEAK, Petitioner-Appellee.)

Fifth District   No. 77-2

Opinion filed September 23, 1977.

F. William Bonan, of Bonan & Bonan, Chartered, of McLeansboro, for appellant.

Alan C. Downen, of McLeansboro, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The petitioner, Walter C. McPeak, filed a petition for the appointment of a conservator in the circuit court of Hamilton County, alleging that his mother, Della McPeak, was incompetent and incapable of managing her person and estate because of old age and deterioration of mentality. Following a bench trial, the trial court entered an order granting the petition from which order respondent, Della McPeak, brings this appeal.

The record shows that respondent was 81 years old at the time of trial and the mother of two sons, petitioner Walter C. McPeak and W. L. McPeak. One month prior to the filing of the instant petition, respondent voluntarily entered the Hamilton Memorial Nursing Home after giving her son W. L. McPeak power of attorney over her estate. At trial, petitioner presented evidence showing that prior to moving into the nursing home, respondent resided in her home and, during that time, she generally relied on her family and friends to help her clean her house, run errands, buy groceries, cash checks, pay bills and to accomplish other similar everyday tasks. It was undisputed that with the help of others, she kept herself and her home clean and organized and her affairs in good order. There was testimony that at one point, apparently after executing the power of attorney to her son, W. L. McPeak, she was upset because a blank check she had signed had been cashed for $2,700; however, the circumstances surrounding this incident were not fully disclosed.

Respondent's health was described as poor. She was thin and pale. She suffered from a heart ailment for which she had been hospitalized a number of times since entering the nursing home. She also had difficulty in breathing and was only able to walk short distances unaided. The petitioner, his two daughters, two of respondent's friends and two nursing home employees all testified that at times respondent was forgetful, confused and repetitive. Each stated the opinion, based upon their personal observation of respondent, that her mind was deteriorating and that she was not capable of taking care of herself or her affairs.

On behalf of the respondent five nursing home employees testified about respondent's mental and physical condition during the time she resided in the nursing home. She was described as mentally alert despite her physical disabilities. She has kept herself clean and has insisted on keeping her surroundings neat and orderly. At the nursing home, she has a room in a wing designated for those not requiring extensive assistance. Respondent, herself, did not testify or appear in court because to do so would be physically too strenuous for her.

On appeal respondent raises a number of issues for review. We, however, will focus our attention on the dispositive question of whether the findings of the trial court are against the manifest weight of the evidence.

Section 11—4 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, par. 11—4), authorizes a court to "adjudge a person an incompetent as defined in this Act and appoint a conservator of his person or estate, or both." Section 11—2 of the Probate Act of 1975 defines "incompetent" as pertinent here, as "* * * any person who because of * * * old age * * * or deterioration of mentality is incapable of managing his person or estate * * *." The test, therefore, which is applied in judicially determining whether a conservator should be appointed is whether the individual is capable of managing his person or estate. (*Macdonald v. La Salle National Bank*, 11 Ill. 2d 122, 142 N.E.2d 58, *appeal dismissed*, 355 U.S. 271; *In re Conservatorship of Browne*, 35 Ill. App. 3d 962, 343 N.E.2d 61; see also Annot., 9 A.L.R.3d 774 (1966).) In *Loss v. Loss*, 25 Ill. 2d 515, 185 N.E.2d 228, the evidence showed that the alleged incompetent was an elderly woman, who had suffered a stroke rendering her completely paralyzed on one side and was, therefore, generally unable to speak or swallow and required around the clock attention. In addition there was evidence that her estate was being unwisely depleted so as to leave her impoverished. The court stated in reference to a substantially similar antecedent to the instant statute that for a disability to be sufficient to permit the appointment of a conservator, it must be such as to render the person incapable of managing his affairs.

> "* * * [W]hether the incompetency be founded upon physical or mental incapacity, judicial intervention is permitted only to protect those who are themselves unable to protect their persons or property. Stated differently, the statute deprives no one of their rights over their property, for it may come into operation only when a person is incapable of exercising those rights for himself." (25 Ill. 2d 515, 517, 185 N.E.2d 228, 229.)

In *Loss*, the court affirmed the appointment of a conservator of the estate holding that the evidence showed that she was unable to protect her property or manage her affairs to her own best interests. (See also *In re Estate of Liebling*, 118 Ill. App. 2d 460, 254 N.E.2d 531.) So too, in *In re Estate of Stevenson*, 44 Ill. 2d 525, 256 N.E.2d 766, the court affirmed the appointment of a conservator of the defendant's estate upon evidence that because of mental and emotional disturbances the defendant seriously neglected her property resulting in the waste and dissipation thereof. On the other hand, in *In re Estate of Collins*, 2 Ill. App. 2d 47, 118 N.E.2d 57 (abstract), the court held that the petitioners had not established a prima facie case where the evidence showed that the person, aged 96, did not suffer from a serious degree of mental deterioration, and he was cared for, and his business affairs attended to, by his daughter and there was no evidence showing lack of care for his person or mishandling of his estate.

■■■ In the case at bar, the petitioner's evidence merely established the respondent's weakening of vigor, skill and acuity which is a normal concomitant to advanced years. That respondent also suffered from a heart ailment and a shortness of breath is undisputed by her. However, to simply establish certain disabilities is alone insufficient to support the determination of incompetency, the evidence must also show the respondent's incapability of managing her person or estate. The record is barren of any such evidence. In this regard, the unsubstantiated opinions of petitioner's witnesses, that respondent was not capable of taking care of herself or her affairs, without any reasons given for such conclusions, will not support an adjudication of incompetency. (*In re Conservatorship of Browne*, 35 Ill. App. 3d 962, 343 N.E.2d 61.) Moreover, the record supports the contrary conclusion. Respondent's capability to manage her person was exhibited by her choice to enter a nursing home, where she could be fully assisted, to the extent necessary, in her day-to-day care. The capability to manage one's person does not resolve itself upon the question of whether the individual can accomplish tasks without assistance but rather whether that individual has the capability to take care and intelligently direct that all his needs are met through whatever device is reasonably available under the circumstances. In the instant case there was no evidence of a lack of care or of a want of respondent's sense of responsibility to see to it that she received adequate food, housing, clothing, medical attention and other like needs. So too, respondent's capability to manage her estate was exhibited by her execution of power of attorney in her son, W. L. McPeak, thereby giving a responsible recognition to her own shortcomings caused by her debilities while at the same time retaining ultimate control and direction in herself. No evidence was presented showing any waste or dissipation of her assets or any likelihood thereof and no evidence was presented showing any mishandling of her business affairs. The testimony that she was upset at one point because of a check for $2,700, rather than showing mismanagement of her estate, supports the conclusion that she exercises a watchful eye over her property and that she responds to significant action taken in connection therewith. The respondent, by purposefully entering a nursing home and executing power of attorney in her son, showed herself to be capable to protect herself and her property by intelligently and responsibly exercising her rights and recognizing her limitations.

The trial court found it significant that respondent had not personally appeared in the courtroom on the day of trial as showing her lack of competence. We cannot attach any such significance to her failure to personally appear. It was undisputed that to have so appeared would have been physically too strenuous. Respondent retained counsel to

appear in her behalf and to protect and defend her rights. In light of her physical disabilities, a conservator could have done no more.

For the foregoing reasons, we reverse the order of the circuit court of Hamilton County finding respondent incompetent and appointing a conservator.

Reversed.

CARTER, P. J., and G. J. MORAN, J., concur.