*In re* ESTATE OF NELLIE J. MACKEY.—(ROY MACKEY, Petitioner-Appellee, *v.* NELLIE J. MACKEY, Respondent-Appellant.—(UNION NATIONAL BANK OF STREATOR, Appellee).)

Third District   No. 79-510

Opinion filed June 18, 1980.

Eric B. Deobler, of Peter F. Ferracuti, of Ottawa, for appellant.

Paul V. Martin, of Lanuti & Martin, of Ottawa, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Nellie J. Mackey had filed this appeal from the judgment of the court in her incompetency proceeding appointing guardians for her person and for her estate. A jury returned a verdict finding her to be a disabled person, not fully able to manage her person or estate. On the basis of these findings, the court appointed Roy Mackey as guardian of the person of

Nellie Mackey and the Union National Bank of Streator as guardian over her estate. Originally, on this appeal, counsel for Mrs. Mackey argued that the verdicts were against the manifest weight of the evidence, that the court erred in instructing the jury as to the law, and that the court erred in failing to comply, in the proceedings, with pertinent sections of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—1 *et seq.*), which sections became effective after the initial petition had been filed, but prior to trial or final judgment in the case. Reversals were sought of both guardianship appointments. Subsequent to the filing of this appeal, Nellie J. Mackey died. Her death has rendered moot those questions raised which addressed the appointment of a guardian over the person of Mrs. Mackey. The only questions which remain for decision on this appeal are those pertaining to the appointment of a guardian over Mrs. Mackey's estate.

Nellie Mackey, who was 86 years of age, lived on her farm near Streator, with her invalid daughter, Delores, aged 55. Mrs. Mackey's husband died in May 1978, and she and her daughter continued to live on the family farm thereafter. The farm consists of about 212 acres, 80 of which are farmed, with the remainder in timber.

On the question of Mrs. Mackey's abilities to conduct her own business affairs and manage her estate, the evidence at trial, while contradictory, fully supported the conclusion by the jury and the trial court that Nellie Mackey was in need of a guardian over her estate. Petitioner Roy Mackey, Mrs. Mackey's physician, and a number of other witnesses testified to their opinion that Nellie Mackey was not capable of managing her business affairs. In addition to their testimony, and most significantly, there was the lengthy testimony of Mrs. Mackey at the hearing. Her own testimony, so far as the estate matters are concerned, overwhelmingly indicated a need for a guardian to handle all affairs of her estate. Contrary to her testimony as to her ability to handle and manage the daily chores around the house, Mrs. Mackey's testimony concerning the farm business and other financial affairs was strongly indicative of her inability to manage or keep track of these matters. She could not remember signing various lease documents to the farm property during 1978 and 1979, although she acknowledged the signatures on the leases were her own. She was confused as to who her farm tenants were at the time of the hearing. She testified at the hearing that she had only bank accounts, and not any time certificates. Then, when shown the time certificates, she remembered them. She was unaware of the amount of funds in her checking account, setting the figure at under $10,000, when, in fact, the figure was more than three times that amount. Mrs. Mackey was unable to identify her attorneys in the litigation and claimed never to have hired them. She could not remember signing a check to them for

their services. She denied having seen her examining physician or having paid him for services, although she did both. It was clear from her testimony at trial that she did not have the capacity to manage or direct, or make responsible decisions concerning her estate and related business affairs. We agree that neither the jury's verdict on this question nor the judgment of the court was against the manifest weight of the evidence.

■■ Turning next to the issues raised concerning a lack of compliance by petitioner with applicable statutory provisions, it will be useful, initially, to set forth the statutory provisions which are in question. The petition for appointment of conservator was filed in June 1978, by Roy Mackey. However, discovery was not completed until after January 1, 1979, and the hearing on Mrs. Mackey's competency did not take place until late April 1979. As such, the later proceedings in the case were governed by various sections of the new Probate Act of 1975, which became effective January 1, 1979. (Ill. Rev. Stat., 1978 Supp., ch. 110½, pars. 11a—1 through 11a—23.) These sections, entitled "Guardians for Disabled Adults," govern proceedings for appointment of a guardian over a disabled adult and take the place of prior provisions. (See Ill. Rev. Stat. 1977, ch. 110½, pars. 11—2, 11—4, 11—9, 11—10.) To the extent that the new provisions are procedural and remedial in nature (and the new provisions pertinent to this case are of that nature), they were applicable to this case as of January 1, 1979. (*Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 184-85, 193 N.E.2d 844; *Edenburn v. Riggins* (1973), 13 Ill. App. 3d 830, 838, 301 N.E.2d 132.) It appears from the record that the trial court proceeded with the understanding that the case, after January 1, 1979, would be governed by the new provisions of the act referred to.

Sections 11a—2 and 11a—3 (Ill. Rev. Stat., 1978 Supp., ch. 110½, pars. 11a—2 and 11a—3, subsequently amended by Pub. Act 81-795, effective September 16, 1979) set forth the standards for determining whether a guardian may be appointed for an individual.

"§11a—2. 'Disabled person' defined. 'Disabled person' means a person 18 years or older who (a) because of mental deterioration or physical incapacity is not fully able to manage his person or estate, or (b) is mentally ill or developmentally disabled and who because of his mental illness or developmental disability is not fully able to manage his person or estate, or (c) because of gambling, idleness, debauchery or excessive use of intoxicants or drugs, so spends or wastes his estate as to expose himself or his family to want or suffering."

"§11a—3. Power to appoint guardians. (a) A guardian may be appointed under this Article for the person of a disabled person if because of his disability he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning

the care of his person. A guardian may be appointed for the estate of a disabled person, if because of his disability he is unable to manage his estate or financial affairs.

(b) Guardianship shall be utilized only as is necessary to promote the well-being of the disabled person, to protect him from neglect, exploitation, or abuse, and to encourage development of his maximum self-reliance and independence. Guardianship shall be ordered only to the extent necessitated by the individual's actual mental, physical and adaptive limitations."

These provisions are a considerable refinement and development over the previous provision (Ill. Rev. Stat. 1977, ch. 110½, par. 11—2), which merely defined an incompetent as one "incapable of managing his person or estate." Under the new sections, the legislature has made it clear that although a person may be a disabled person, in the statutory sense of not being fully able to manage his person, a guardian is not therefore permissible or appropriate, if that person is capable of making and communicating responsible decisions concerning the care of his person. Thus, a person who was physically unable to care for himself, but who could direct others in such activity, would not necessarily need a guardian over his person. Similarly, a person might be a "disabled person" but nevertheless not be in need of a guardian over his estate, because with help from others he is able to direct and manage his affairs and estate. The old provisions of the Act had been construed to reach similar conclusions (*In re Estate of McPeak* (1977), 53 Ill. App. 3d 133, 136, 368 N.E.2d 957), but the legislature, with the 1979 amendments, has made them an express part of the statutory scheme for appointed guardians for disabled adults. There is also an express legislative intention, in section 11a—3 of the new Act, that guardianship "shall be ordered only to the extent necessitated by the individual's actual mental, physical and adaptive limitations." The Act also makes it clear, in that section, that guardianship is to be used to encourage development of the individual's self-reliance and independence. This serious concern that individuals be allowed and encouraged to continue to exercise control over their persons and estates, to the extent possible given their disabilities, can also be seen in section 11a—12 (Ill. Rev. Stat., 1978 Supp., ch. 110½, par. 11a—12, subsequently amended by Pub. Act 81-795, effective September 16, 1979):

"§11a—12. Order of appointment

(a) If basis for the appointment of a guardian as specified in Section 11a—3 is not found, the court shall dismiss the petition.

(b) If the respondent is found to be disabled and to be totally without capacity as specified in Section 11a—3, the court may appoint a plenary guardian for the respondent's person or estate or

both. The court order shall state in writing the factual basis for its findings.

(c) If the respondent is found to be disabled and to lack some but not all of the capacity as specified in Section 11a—3, the court shall appoint a limited guardian of the respondent's person or estate or both. The court shall enter a written order setting forth the factual basis for its findings and shall set forth the limits of the duties and powers of the guardian and the legal disabilities to which the respondent is subject.

(d) The duration of the term of guardianship shall be specified in the court order.

(e) The court shall give due consideration to the preference of the disabled person as to a guardian in its appointment."

Subsection (c) of 11a—12 indicates that the legislature intends the courts to make a determination as to whether a limited guardianship would be possible in a case where an individual was not totally incapable of caring for himself or his affairs and estate. The new Act provisions envisage and direct a careful look into the extent and nature of any disability and a tailoring of guardianship to the requirements and abilities of the individual, with the purpose of encouraging self-reliance and independence. That goal permeates a number of provisions of the new Probate Act of 1975 in this area. See Ill. Rev. Stat., 1978 Supp., ch. 110½, pars. 11a—3(b), 11a—9, 11a—11(e), 11a—12(c).

In the instant case, the requirements of the new statutory provisions were not fully followed by the court below. So far as the record indicates, the court did not inquire into the possibility of a limited guardianship over Mrs. Mackey's person, although the evidence thereon indicated the propriety of such a limited guardianship there. Nor did the court enter written findings setting forth the factual basis for its appointments of guardians over Mrs. Mackey's person and estate. The court failed to set forth the duration of the guardianship and it failed to inquire as to Mrs. Mackey's own preference of guardians, although (as to the latter) the court would not be bound by her preference, as the final decision is within the court's discretion.

These omissions in the court's order might normally require a remandment for purposes of compliance with the procedural requirements of section 11a—12. However, no purpose would be served by such a remandment in the present case, (1) since Mrs. Mackey is now deceased and (2) since the evidence presented fully established that she was entirely incapable of managing her estate and business affairs. Similarly, any failure by the court to comply with the report requirements of section 11a—9 (Ill. Rev. Stat., 1978 Supp., ch. 110½, par. 11a—9) would

appear to have no prejudicial effect at this time. When the initial petition was filed, that requirement did not pertain, and, in addition, the record indicates that she underwent several evaluations as to her condition and two physicians testified at trial. We, therefore, find that any error in the procedures does not require reversal of the verdict as to the appointment of a guardian over her estate.

■■ As to the issues raised concerning the jury instructions, while we find error in the instructions, we find no reversible error. The issues instruction given by the court set forth only the standard for determining whether a person was a "disabled person" under section 11a—2. The court should have based both the issues instruction and the burden of proof instruction on *both* section 11a—2 and section 11a—3, which sections together set forth the standards to be applied by the jury in guardianship proceedings.

. Also, the jury verdict forms and the issues instructions should have separated the questions as to guardianship over the person and guardianship over the State. It is entirely possible that a person could be capable of managing his or her own person and home without being also able to handle his or her financial matters and business affairs. By lumping both issues together in a single instruction or verdict form, the jury is left with the potentially erroneous suggestion that there is only one question before them. Also, the jury verdict forms should state the available jury conclusions in the language of the standards to be applied. In the instant case, the verdict forms combined the guardianship questions and set forth only the "fully capable standard" mentioned in section 11a—2, without any statement of the standard set forth in section 11a—3. While there was error in the instructions, however, as we have noted, the errors do not require reversal.

■■ Equitable considerations require affirmance in the instant case. It is established, that if a judgment is correct upon the facts and is the only one which is proper, given the evidence and the law of the case, erroneous instructions will not then necessitate a reversal. *LaPlaca v. Gilbert & Wolf, Inc.* (1976), 37 Ill. App. 3d 259, 261, 345 N.E.2d 774; *McCullough v. McTavish* (1978), 62 Ill. App. 3d 1041, 379 N.E.2d 890.

In the instant case, it is apparent that the judgment reached on the question of the necessity for a guardian over the estate of Nellie Mackey was the only proper judgment, given the overwhelming evidence and the law to be applied. Nothing constructive would be achieved by a remandment of this cause.

For the reasons stated, the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.