In the Matter of the CONSERVATORSHIP OF Edgar Ray GOODMAN.

Edgar Ray GOODMAN, Appellant,

v.

Paul GOODMAN, Appellee.

No. 68194.

Court of Appeals of Oklahoma,
Division No. I.

Nov. 29, 1988.

Mark Colbert, Ardmore, for appellant.

Thomas P. Carlock, Ardmore, for appellee.

HUNTER, Presiding Judge:

Upon consideration of the briefs of the parties and the record in the above-styled matter, the court finds:

Appellant appeals the involuntary imposition of the court ordered conservatorship of his property, upon a finding that, although not mentally incompetent, he is unable to manage his property due to his advanced age.

Appellant is an 84 year-old widower, living in a trailer house close to one of his sons, Gene Goodman. After the death of his wife in 1986, Appellant gave his son Gene a power of attorney for the purpose of handling his affairs. He also deeded his land and minerals to his son Gene. This obviously irritated the rest of his children and his son Paul, Appellee, filed this action to be appointed conservator for his father. Paul elected not to file for guardianship and allege that his father was mentally incompetent. The trial court, after listening to this family squabble, entered an order finding that Appellant, due to his advanced age, was unable to manage his property. No evidence was presented to the trial court as to the nature and extent of Appellant's property. After appointing son Paul as conservator, the trial judge inquired and was advised by Appellant's counsel that Appellant's property consisted of a monthly income of about $250.00 from social security. Upon inquiry by Appellant's attorney, the trial court stated that it was not his finding that the Appellant was incompetent. This appeal was timely commenced.

Appellant complains that Title 58 O.S. 1981, §§ 890.1 and 890.2, by which an involuntary conservatorship may be imposed upon him, absent a finding that he is mentally incompetent, is unconstitutional.

Title 58 O.S.1981 § 890.1 provides as follows:

When it is represented to the court upon verified petition of any person or any relative or friend that such person is an inhabitant or resident of the county and by reason of advanced age or physical disability is unable to manage his property, the court must cause notice to be served personally on the person so alleged to be unable to manage his property, of the time and place of hearing such petition, not less than five (5) days before the time so appointed, and such person, if able to attend, must be produced before the court at the hearing. If the person for whose property the conservator is to be appointed, is himself the petitioner, or consents in writing to the appointment of a conservator as herein provided, no notice shall be required.

Section 890.2 provides as follows:

If, after a full hearing and examination upon such petition, it appears to the district court that the person in question is, by reason of advanced age or physical disability, unable to manage his property, the judge must appoint a conservator of his estate.

The wording of this statute tracks, almost identically, the wording of Title 58 O.S.1981 §§ 851 and 852, providing for the appointment of a guardian for mentally incompetent and insane persons.

█ If the only purpose of the statute is to allow a person who is, by reason of advanced age or physical incapacity, unable to manage his own property, to voluntarily apply to the court to have a conservator appointed, it is constitutional. If a purpose of the statute is to allow involuntary intervention in the property affairs of citizens, absent a finding of mental incompetence, it is unconstitutional as it is a clear violation

of the State and Federal Constitutional provisions which guarantee every citizen the right to life, liberty and property. Oklahoma Constitution, Article 2, § 2 and Section 33. United States Constitution, Amendments 5, 10 and 14.

It is undisputed that Appellant gave his son Gene a power of attorney. A Power of attorney is a contract of agency. *Filtsch v. Bishop*, 118 Okl. 272, 247 P. 1110 (1926). Generally a person may do through an agent whatever he is empowered to do in his own proper person. *First Nat. Bank v. Southland Production Co.*, 189 Okla. 9, 112 P.2d 1087 (1941). The trial court did not find that Appellant was mentally incompetent, and mental competence is not an issue in Conservatorship cases. *Matter of Conservatorship of Spindle*, 733 P.2d 388 (Okla.1986). Generally, a person sui juris is capable of being a principal, ... C.J.S. Agency, § 28 p. 592. The inability to manage one's own property does not relate to menial tasks which he has procured to be done for him or which he is capable of procuring to be done for him; and it does not relate to the ability or capacity of such person to exercise or understand technical, special or professional skills or judgments for which he has not been trained or educated. *In re Guardianship of Bogan*, 441 P.2d 972 (Okla.1968). Appellant has procured the menial tasks of collecting his social security, buying his groceries, getting his haircut, paying his rent, cleaning his trailer, providing his transportation, and cooking some of his meals by giving his son Gene a power of attorney.

The parties agree that Oklahoma courts have not addressed the issue of the constitutionality of this statute. The dissent urges that the statute was implicitly held to be constitutional in *Spindle*, supra. We cannot agree that the constitutionality of a statute may be decided by implication. Our Supreme Court has long held that courts will not rule on the constitutionality of a statute unless, as the dissent points out, it is necessary to the decision. The constitutionality of this statute was not an issue in *Spindle* and was not, therefore, addressed by the Supreme Court. We find that the constitutionality of the statute was

properly raised by Appellant, and that a ruling on that question is necessary to the decision here. We further find that this is not a case of anticipated constitutional questions, or anticipated injury to Appellant. The statute, under the guise of benefitting the conservatee, deprives him of his constitutionally protected right to enjoy the gains of his own labor, as well as prohibiting him from contracting except for necessities. These are *real* injuries and *real* harm, not merely threatened, anticipated or hypothetical. The United States Supreme Court has said "But the exercise of the power to hold a law to be invalid because of its conflict with the Constitution is the ultimate and supreme function of courts." *Chicago, etc., Ry. Co. v. Wellman*, 143 U.S. 339, 343, 12 S.Ct. 400, 36 L.Ed. 176 (1892), affirming 83 Mich. 592, 47 N.W. 489.

Appellee argues that a legislative act is presumed to be constitutional and any doubt should be resolved in favor of the validity of the action taken by the legislature. *Draper v. State*, 621 P.2d 1142 (Okla.1980). It is true that a strong presumption exists in favor of the constitutionality of a legislative enactment, however, there is an exception in cases involving the rights, privileges and immunities of the citizen. *Board of Equalization of Muskogee County v. Exchange Nat. Bank of Muskogee*, 104 Okl. 93, 230 P. 728 (1925); *In re Walters Nat. Bank of Walters*, 100 Okl. 155, 228 P. 953 (1924). Where it is proposed by a statute to deny, modify, or diminish a right or immunity secured to the people by an explicit constitutional provision, the presumption is against the validity of the statute, and the courts should enforce the constitutional provision. *Salter v. State*, 2 Okl.Cr. 464, 102 P. 719 (1909).

Although acts which interfere to some extent with constitutionally guaranteed rights may be sustained as within the police power, *One Chicago Coin's Play Boy Marble Bd., No. 19771 v. State ex rel. Adams*, 202 Okl. 246, 212 P.2d 129 (1950), no exercise of the state's police power is involved here. The inherent right, guaranteed by our state constitution, to the enjoy-

ment of the gains of one's industry is a fundamental right. "Where fundamental rights and liberties are involved, classifications which might restrain them must be strictly construed." *Thayer v. Phillips Petroleum Co.*, 613 P.2d 1041 (Okla.1980).

In *Thayer*, the Supreme Court stated: There are two standard tests are used to review legislative classification in cases involving the equal protection clause. The first is the basic and conventional standard for reviewing discrimination or differentiation of treatment between classes of individuals. It manifests restraint by the judiciary in relation to the discretionary act of the legislature, and invests legislation involving differentiated treatment with a presumption of constitutionality. This standard requires merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose.... *Thayer*, supra, at 1044.

A more stringent test is applied in cases involving suspect classifications which touch on fundamental interests. In these instances, the United States Supreme Court has adopted an attitude of active and critical analysis which subjects the classification to strict scrutiny. Under the strict standard applied in such cases, the state bears the burden of establishing, not only that it has a compelling interest which justifies the law, but that the distinctions drawn by the law are necessary to further its purpose. Id at 1044.

We find no compelling state interest which justifies the appointment of a conservator over the property of a mentally competent citizen, against his will.

In our state Constitution, the utmost pains have been taken to preserve all the securities of individual liberty, and the courts cannot refuse obedience to its mandates. The Legislature cannot alter, annul, or avoid the constitutional safeguards of person and property set forth in the Bill of Rights. It is the duty of courts to be watchful for the constitutional rights of the citizens, and against any stealthy encroachments thereon. When the courts are con-

fronted with a clear and explicit provision of the Constitution, and when it is proposed to avoid or modify or alter the same by a legislative act, it is their plain duty to enforce the constitutional provision, unless it is clear that such legislative act does not infringe it in letter or spirit. Citizens are not to be thus lightly deprived of their constitutional rights to "the enjoyment of the gains of their own industry". *Fish v. Deaver*, 71 Okl. 177, 176 P. 251 (1918).

■ That portion of Title 58 O.S. 1981 §§ 890.1, et seq. which allows for the appointment of a conservator of the property of a mentally competent citizen, against his will and over his objection, based solely on advanced age or physical disability, is invidiously discriminatory and unconstitutional.

Because we cannot separate the unconstitutional portion of the statute (the involuntary appointment of a conservator) from the constitutional portion (voluntary application), we must hold the statute unconstitutional in its entirety.

For the reasons above stated, the judgment of the trial court appealed from is REVERSED and this matter REMANDED with directions to dismiss the proceeding.

REVERSED AND REMANDED WITH DIRECTIONS.

HANSEN, J., concurs.

MacGUIGAN, J., dissents and writes separate opinion.

MacGUIGAN, Judge, dissenting:

Being mindful of the long-standing admonition for courts to refrain from passing on the constitutionality of a statute unless absolutely necessary, *Smith v. Westinghouse Elec. Corp.*, 732 P.2d 466 (Okl.1987), I must respectfully dissent from the majority opinion's holding that our statute allowing for the appointment of a conservator is unconstitutional.

The authority for appointment of a conservator in this jurisdiction is strictly statutory. 58 O.S.1981 § 890.1 enumerates the requirements for notice and hearing of petition for appointment of conservator, and § 890.2 provides that, after such hearing, if

it appears that the proposed conservatee is, by reason of advanced age or physical disability, unable to manage his property, the trial court must appoint a conservator of the estate.

The majority, in its opinion, presumes the appointment of such conservator pursuant to Title 58 O.S.1981 §§ 890.1 and 890.2 encompasses an automatic deprivation of enumerated constitutional rights. Specifically, the majority opines that the appointment of a conservator without evidence of mental incompetence is unconstitutional as an unwarranted abridgment of the right to own and manage property and the right to life and liberty. Oklahoma Constitution, Article 2 § 2, and Section 33; United States Constitution, Amendments 5, 10, and 14. However, this argument was implicitly addressed in *In re Conservatorship of Spindle*, 733 P.2d 388 (Okl.1986), in which the Oklahoma Supreme Court dealt with the right of a ward, or conservatee, to make a gift. As that Court stated:

> Reading these provisions as a whole it is clearly intended that a way be provided to facilitate the handling of the property of a ward when the ward is precluded from doing so by physical disabilities ... [W]e do not conclude that the Legislature intended to prohibit the ward's participation or actions in matters affecting [his] property ... [T]he legislation is designed to compensate for the ward's physical condition by authorizing another to deal with the ward's estate, and thus to assist the ward. 733 P.2d at 391, 392.

Thus, far from imposing constitutionally impermissible restrictions on a conservatee's right to "life, liberty, and property", our Supreme Court has concluded that the intention of the conservatorship statutes is to facilitate the handling of a conservatee's property for the benefit of that conservatee, without prohibiting the conservatee's participation in decisions affecting his or her estate.

The thrust of the majority's opinion appears to center on the possible consequences of, as aptly characterized by the majority, the "family squabble" over the instant conservatee's property or lack thereof. Although this raises an uneasy spector of the possible misapplication of the conservatorship statutes, because I find the statute in question not facially unconstitutional, I cannot agree to an imposition of such unconstitutionality on the basis of some future disagreement between conservator and conservatee over the disposition of the latter's property. We have long been directed to not anticipate constitutional questions, *Todd v. Oklahoma State Democratic Central Committee*, 361 F.Supp. 491 (W.D.Okl.1973), nor to assume a violation of constitutional rights; *Sledge v. Carlson*, 405 F.Supp. 1315 (W.D.Okl. 1975).

In the case of *In re Mayes–Rogers Counties Conservancy Dist. Formation*, 386 P.2d 150 (Okl.1963), our Supreme Court refused to consider the contentions of protestants that certain statutes dealing with the organization of conservancy districts were unconstitutional, where the judgment in the proceeding under those statutes simply ordered formation of conservancy districts and imposed no liability on the protestants, no liens on their property, and assessed no taxes, no harm was sustained by protestants, and no injury was threatened.

Likewise, in the instant case, because our Supreme Court has read our conservatorship statutes as a whole as not prohibiting the conservatee's participation or action in matters affecting his estate, I feel constrained to further address constitutionally impermissible action which has not been sustained, has not been threatened, and may, in fact, never materialize, as was the case in the *Mayes–Rogers Counties Conservancy District Formation* case. Assuming the facial constitutionality of the conservatorship statutes, the unconstitutionality of such statutes may not be urged by resort to hypothetical applications. *Kimery v. Public Service Co. of Oklahoma*, 622 P.2d 1066 (Okl.1980).

For these reasons, I would affirm the trial court's appointment of a conservator in this matter.