**In re the CONSERVATORSHIP OF Rosalie EDELMAN, Conservatee.**

No. C3–89–683.

Court of Appeals of Minnesota.

Dec. 5, 1989.

Randall D.B. Tigue, Minneapolis, for appellant/conservatee.

Daniel J. Steinhagen, Maser & Amundson, P.A., Edina, for respondent/conservator.

Heard, considered and decided by FORSBERG, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

FORSBERG, Judge.

Appellant Rosalie Edelman was committed to a residential care facility due to her inability to provide for her own health and safety. A petition to establish a conservatorship of the person and estate was subsequently filed. The district court appointed a conservator of the person, but refused to appoint a conservator of the estate. We affirm.

## FACTS

Rosalie Edelman is a 73–year–old woman currently under residential care pursuant to a commitment order. Edelman has a 20–year history of hypothyroidism and schizophrenia. She has been able to control these diseases with the use of drugs.

In October of 1988, Edelman was taken to Riverside Medical Center as a result of her deteriorating mental condition. At that time, Edelman was living with decaying trash strewn about her apartment and inoperable plumbing fixtures. She would loudly move furniture during the evening while talking to and shouting at imaginary people. However, Edelman always paid her rent, by check, in a timely manner.

While Edelman was hospitalized, a petition to establish a conservatorship of the person and estate was filed in December of 1988. At that point, Edelman had allowed

her financial situation to fall into disarray. Her income was not properly deposited in her checking account and many bills were not paid. Significantly, Edelman had allowed her Blue Cross/Blue Shield coverage to lapse.

With the assistance of her attorney's secretary, Marilee Kaeder, Edelman put her financial affairs in order after her commitment. They succeeded in reinstating Edelman's Blue Cross/Blue Shield coverage. Edelman made payments to Blue Cross and Blue Shield and other creditors. Edelman also made a number of transfers between her banking and checking account to cover shortfalls before they became overdrafts. At the conservatorship hearing, Kaeder testified she believed Edelman to be capable of handling her own finances.

Edelman's neurologist and psychiatrist testified he was familiar with the conservatorship statute and he felt appointment of a conservator of the person was appropriate. He also stated that by taking proper medication Edelman would be able to balance a checkbook. The doctor was never asked whether he felt a conservator of Edelman's estate was needed.

Edelman's social worker testified Edelman would act appropriately with sufficient cues and reminders. Edelman never refused to take her medications when given proper cues. However, she believed that Edelman would not continue to take her drugs unless cued.

Medical records and Edelman's testimony indicated she was paranoid and delusional. She remembered the incidents leading to her commitment in October of 1988 as being the result of being "conked" in the head. She believed she was being pursued and persecuted by Governor Rudy Perpich and that her brother was holding Julia Child hostage in Golden Valley. She did not recall having any difficulty with late bills and believed the commitment proceedings were based on false charges.

The court found the least restrictive alternative for Edelman's protection to be appointment of a conservator of the person, including a protective arrangement under Minn.Stat. § 525.54, subd. 7 (1988), and denied the petition to appoint a conservator of her estate. In appointing a conservator of the person, the court found Edelman unable to meet her personal needs. In refusing to appoint a conservator of the estate, the court noted that prior to October of 1988 Edelman had been paying her bills and adequately managing her financial affairs. The court found the lapse in payment was due to her medical condition and hospitalization and that with proper use of drugs she was once again able to control her own financial affairs.

## ISSUES

1. Did the court improperly appoint a conservator of the person?

2. Did the court properly deny the petition for a conservatorship of the estate?

## ANALYSIS

The probate court has broad powers in appointing a conservator. Minn.Stat. § 525.54(6) (1988). "[An appellate court] will not interfere with the exercise of this discretion except in the case of clear abuse." *Schmidt v. Hebeisen*, 347 N.W.2d 62, 64 (Minn.Ct.App.1984); *see In re Guardianship of Stanger*, 299 Minn. 213, 216, 217 N.W.2d 754, 755 (1974).

### 1. Conservatorship of the Person.

Edelman contends, first, the conservatorship is not the least restrictive alternative as required by the commitment statute, Minn.Stat. § 253B.09, subd. 1 (1988).[1] Sec-

---

1. Minn.Stat. § 253B.09, subd. 1 states in pertinent part:

    **Subdivision 1. Standard of proof.** If the court finds by clear and convincing evidence that the proposed patient is a mentally ill, mentally retarded, or chemically dependent person and, that after careful consideration of reasonable alternative dispositions, including

    but not limited to, dismissal of petition, voluntary outpatient care, informal admission to a treatment facility, appointment of a guardian or conservator, or release before commitment as provided for in subdivision 4, it finds that there is no suitable alternative to judicial commitment, the court shall commit the patient to the least restrictive treatment program

ond, Edelman contends there was insufficient evidence to show in addition to her incapacitation, there was also need for a conservator as required by Minn.Stat. § 525.551, subd. 5 (1988).[2] Finally, Edelman contends the conservatorship violates her constitutionally protected rights to privacy as guaranteed in *Jarvis v. Levine*, 418 N.W.2d 139 (Minn.1988).

## A. Sufficiency of the Evidence.

■ Edelman contends although the court may have properly found she was incapacitated within the meaning of Minn. Stat. § 525.54, subd. 2 (1988)[3], it was not shown by clear and convincing evidence that she was in need of the supervision and protection of a conservator as required by Minn.Stat. § 253B.09, subd. 1. Edelman argues there is no need for a conservator since she is currently subject to a commitment order which provides for her personal care and needs.

We agree with the probate court that the repeated institutionalizations, including the present commitment, are evidence of a need for a conservator. Even though she is currently institutionalized, her mental and physical disorder, which has been described as life-threatening, necessitates the protection of a conservator to make decisions regarding her personal needs for medical care, shelter, and safety.

The statutory scheme covering conservatorships does not provide that a commitment order is a substitute for conservatorship. Commitments are determinate, Minn. Stat. § 253B.13, while conservatorships last as long as the conservatee remains incapacitated. Minn.Stat. § 525.581. Further,

commitment orders only empower the institution to provide treatment for mental illness or chemical dependency. *See* Minn. Stat. § 253B.03, subd. 6 (1988). There is ample evidence in the record that additional decision-making authority vested in a conservator of the person remains necessary in Edelman's case.

## B. Least Restrictive Alternative.

■ In addition to the requirement that a conservatee be incapacitated and in need of supervision, the statute also requires "that no appropriate alternatives to the * * * conservatorship exist [ ] which are less restrictive of the person's civil rights and liberties, * * *." Minn.Stat. § 525.551, subd. 5(3) (1988). In this regard, Edelman contends a commitment order combined with establishment of a conservatorship is more restrictive than simply a commitment order.

The probate court properly found appellant needs both commitment and a conservator for different reasons.

The criteria set forth in M.S. § 525.54, subd. 2, in defining an incapacitated person is not whether her personal needs are being met, but whether she is impaired to the extent of lacking sufficient understanding or capacity to make or communicate responsible decisions concerning her personal needs. Her decision at this time is that she wants to leave UHCC forthwith and be on her own. Thus, she is in need of a conservator of her person; * * *.

## C. Edelman's Privacy Rights.

■ Edelman claims establishment of the conservatorship violates her right to

---

which can meet the patient's treatment needs consistent with section 253B.03, subdivision 7.

**2.** In relevant part, Minn.Stat. § 525.551, subd. 5 states:

If upon completion of the hearing and consideration of the record the court finds: (a) that the requirements for the voluntary appointment of a conservator or guardian have been met, or (b)(1) that the proposed ward or conservatee is incapacitated as defined in section 525.54; and (2) in need of the supervision and protection of a guardian or conservator; and (3) that no appropriate alternatives to the guardianship or conservatorship exist

which are less restrictive of the person's civil rights and liberties, such as those set forth in section 525.54, subdivision 7, it shall enter its order or judgment * * * specifying the powers of the conservator * * *.

**3.** Minn.Stat. § 525.54, subd. 2 states:

"Incapacitated person" means * * * any adult person who is impaired to the extent of lacking sufficient understanding or capacity to make or communicate responsible personal decisions, and who has demonstrated deficits in behavior which evidence an inability to meet personal needs for medical care, nutrition, clothing, shelter, or safety.

privacy guaranteed by art. I, §§ 1, 2, and 10 of the Minnesota Constitution. She argues the conservator has the power to consent to even intrusive neuroleptic medication. The Minnesota Supreme Court held the administration of such medications under those circumstances unconstitutional. *Jarvis v. Levine,* 418 N.W.2d at 148.

We do not question that, should the occasion arise, a *Jarvis* hearing *must* be afforded Edelman. However, there is no evidence that Edelman has ever refused neuroleptic medications. *Jarvis* only requires a hearing where such drugs are refused by the patient.

2. Conservatorship of the Estate.

■ Respondent has filed a notice of review contending the probate court improperly refused to appoint a conservator of Edelman's estate. The burden is on the petitioner to show by clear and convincing evidence that a conservator is necessary to protect a party's estate and financial affairs. Minn.Stat. § 525.551, subd. 3 (1988); Minn.Stat. § 525.54, subd. 3 (1988).

Only Kaeder testified to Edelman's capacity to manage her own financial affairs. In her view, Edelman was capable of conducting her own financial affairs. Edelman's physician also testified that although he believed appointment of a conservator of the person was necessary to insure Edelman's continued use of medication, once her drugs were taken, Edelman would be competent to control her own financial affairs.

In determining whether to appoint a conservator of the estate, the probate court will consider whether

(1) [T]he person is unable to manage the person's property and affairs effectively because the person is an incapacitated person, and (2) the person has property which will be dissipated unless proper management is provided, or that funds are needed for the support, care and welfare of the person * * * and (3) a guardian or conservator is necessary to adequately protect the person's estate or financial affairs. "Incapacitated person" means, * * * any adult person who is

impaired to the extent that the person lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the person's estate or financial affairs, and who has demonstrated deficits in behavior which evidence an inability to manage the estate, * * *.

Minn.Stat. § 525.54, subd. 3 (1988).

We agree with the probate court that respondent did not establish these factors by clear and convincing evidence. To the contrary, the court specifically found:

Rosalie Edelman knows the nature and extent of her assets and the bills which are due and can make decisions as to the order in which to pay these bills. Her Blue Cross/Blue Shield has been reinstated through her efforts.

As there is ample evidence in the record to support the probate court's decision to deny the petition to establish a conservatorship of the estate, the probate court must be affirmed.

DECISION

Affirmed.