445 S.E.2d 736

STATE of West Virginia, ex rel. Tom SHAMBLIN, Petitioner,

v.

Emily G. COLLIER and the County Commission of Jackson County, a corporation, Respondents.

No. 22008.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 1994.

Decided May 23, 1994.

---

Daniel F. Hedges, Charleston, for petitioner.

Leah Taylor, Asst. Pros. Atty. for Jackson County, Ripley, for Jackson County Com'n.

WORKMAN, Justice:

Petitioner, Tom Shamblin, invokes the original jurisdiction of this Court seeking a writ of habeas corpus to dissolve the committee appointment of Petitioner's daughter, Emily G. Collier, following a determination of his incompetency by the Jackson County Commission ("Commission"). He also challenges the limited legal representation provided for incompetents by appointed guardians ad litem. Having reviewed this matter, we remand this case to the Jackson County Circuit Court [1] for additional proceedings for the purpose of determining whether Petitioner was properly determined to be incompetent within the meaning of West Virginia Code § 27–11–1 (1992).[2]

Petitioner is eighty-five years old and submits that he is alert, rational, and competent to handle his own affairs. On October 13, 1992, Emily Collier filed a form "petition for hearing on competency" seeking to have her father declared incompetent. The only reasons cited by Ms. Collier. in her petition as grounds for a determination of incompetency were: "Mr. Shamblin is 84 years of age. His health has deteriorated with age. He has breathing problems and is very susceptible to pneumonia."

A copy of the "notice of petition" was served on Petitioner in person at his then-current address on October 22, 1992, by a sheriff's deputy. Additionally, a copy of the notice was served on Petitioner's son, Darrell Shamblin, by certified mail and was signed for by him on October 24, 1992. Petitioner does not read and claims to have been unaware of the incompetency proceeding. Kennad L. Skeen was appointed as guardian ad litem for Petitioner sometime in October or November 1992.[3]

---

1. *See supra,* note 11. Due to the enactment of legislation during the second session of the seventy-first legislature entitled Enrolled Committee Substitute for H.B. 4508, the chapter and section of the West Virginia Code upon which this case was based (W.Va.Code § 27–11–1) have been repealed. Because this case was pending at the time of the statutory repeal, we must still determine whether the Petitioner was properly determined under the existing law to be an incompetent.

2. West Virginia Code § 27–11–1(d) provides, in pertinent part, that:

the county commission may find that (1) the individual is unable to manage his or her business affairs, or (2) the individual is unable to care for his or her physical well-being, or (3) both, and is therefore incompetent, or (4) that the individual is competent.

3. In an affidavit submitted as a part of the record of this case, Mr. Skeen stated that he is "appointed as guardian-ad-litem in most of the committeeship proceedings before the County Commission of Jackson County."

The hearing on Ms. Collier's petition was held before the Commission on November 10, 1992. Petitioner was not present at the hearing. Ms. Collier was the only relative of Petitioner who attended the hearing. After what appears to have been a proceeding limited in both duration and scope,[4] the Commission entered an order finding Petitioner to be incompetent and appointing Ms. Collier as committee for Mr. Shamblin.

In his petition, Mr. Shamblin raises numerous issues, both substantive and procedural, regarding his competency proceeding and competency proceedings in general. Additionally, Petitioner raises serious concerns regarding the perfunctory representation provided by guardians appointed to represent individuals who are the subjects of these proceedings.

With specific reference to his case, Petitioner argues that the termination of his substantial rights and the unnecessary restriction on his personal freedom based merely on advanced age and a past physical illness violates his right to liberty as guaranteed by Article III, Section 10 of the West Virginia Constitution. Furthermore, he contends that a proceeding such as that which occurred in his case which does not set forth facts demonstrating incompetency violates the intent of West Virginia Code § 27–11–1(d) as well as the due process rights afforded individuals under the state constitution.

The transcript from the incompetency hearing reveals that the evidence presented before the Commission and upon which the finding of competency was made was minimal, at best. Mr. Skeen, the guardian ad litem, testified, based on one visit with Petitioner, that Mr. Shamblin knew his age, his children's names, and the name of the President of the United States. Mr. Skeen further testified that Petitioner was unable to name the lady that was providing care to him in a group home and that he had some difficulty identifying the correct date, although he did know what year it was. Mr. Skeen focused on the fact that Petitioner had what he described as either a nervous disorder or obsessive-compulsive behavior based on a scratching problem.[5] Mr. Skeen concluded, somewhat summarily, that based on Petitioner's advanced age, his inability to read and write, and his weight of ninety-four pounds, he was necessarily unable to manage his affairs.

Petitioner's daughter provided the only other testimony regarding her father's condition. Ms. Collier offered the fact that her father had on occasion given her children $50 or $100 at a time when he lived on a fixed income of $890 per month, as an indication that he was unable to manage his affairs. The primary concern which surfaced from her testimony, however, was the perceived escalating costs of providing care for her father.[6] Ms. Collier offered no testimony whatsoever regarding her father's current physical condition. Although the petition filed by Ms. Collier referenced a previous case of pneumonia and the hearing transcript refers to the use of oxygen, there is no indication that Petitioner currently requires the use of an oxygen unit.

The only other evidence submitted was a physician's affidavit, signed by a treating physician of Petitioner, Dr. Casto. The affidavit consisted of three checked boxes on a form, and conclusorily stated that Petitioner was unable to manage his business affairs, unable to care for his own physical well-being, and unable to attend the hearing. No reason was ever offered as to why Petitioner was unable to attend the hearing. He, of course, claims to have been unaware of the

---

**4.** The perceived perfunctoriness of the proceeding is further supported by the transcriber's note just prior to the finding of incompetency, "[t]he statement of findings, from here on, is spoken rapidly and *sounds* as if it were being *read.*" (emphasis in original).

**5.** Petitioner was ultimately diagnosed with a dry-skin disorder which is reportedly now under control.

**6.** Ms. Collier testified that in the past month she had spent $250 of her own money on prescriptions for her father. She noted that, "I can't do this every month, you know. And then, besides, he's not even on very much medication right now. If it accelerates, we could really be in trouble."

hearing[7] until after its occurrence.

To reach a determination of incompetency under the statute, the Commission is required to find either that an individual is unable to manage his business affairs or unable to care for his physical well-being, or both. W.Va.Code § 27–11–1(d), *supra* note 2. These terms are defined as follows:

'Unable to manage one's business affairs' means the inability to know and appreciate the nature and effect of his or her business transactions, notwithstanding the fact that he or she may display poor judgment.

'Unable to care for one's physical well-being' means the substantial risk of physical harm to himself or herself as evidenced by conduct demonstrating that he or she is dangerous to himself or herself, notwithstanding the fact that he or she may display poor judgment.

W.Va.Code § 27–11–1(d).

■ It is axiomatic that a declaration of incompetency and the resulting appointment of a committee, guardian, or conservator to oversee an individual's affairs may affect constitutionally-guaranteed liberty interests:

One of the historic liberties which is protected by the due process clauses ... is the right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security. Appointment of a guardian results in a massive curtailment of liberty, and it may also engender adverse social consequences. The guardian becomes the custodian of the person, estate and business affairs of the ward; the guardian dictates the ward's residence; the ward's freedom to travel is curtailed; and the ward's legal relationship with other persons is limited.

*In re Guardianship of Deere,* 708 P.2d 1123, 1125–26 (Okla.1985) (footnotes omitted); *see*

also O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (recognizing substantial restraint on incompetent's personal freedom); Fla.Stat.Ann. § 744.1012 (West Supp.1993) (recognizing as the legislative intent of the Florida Guardianship Law "that adjudicating a person totally incapacitated and in need of a guardian deprives such person of all his civil and legal rights").

In view of the serious limitations on an individual's exercise of his constitutional rights which accompany a declaration of incompetency, Petitioner argues that the proffered justifications for the appointment of a committee must be strictly scrutinized. Petitioner contends that if the individual is sufficiently competent to manage on his own, the state has no legitimate purpose in curtailing the citizen's liberty and additionally, that the least restrictive alternative must be utilized.[8]

■ In this case, it can hardly be argued that the Commission was presented with sufficient evidence of incompetency to warrant its finding against Petitioner. At best, testimony was offered suggesting that Petitioner demonstrated poor judgment in giving his grandchildren larger amounts of his money than he could afford and that he had experienced prior health problems with some resulting weight loss. Regarding the large increments of the gifts to his grandchildren, the statute clearly provides that: "Evidence of mere poor judgment or of different life style shall not be competent evidence upon which to base a finding of incompetency." W.Va.Code § 27–11–1(d).

As far as the physical basis for a determination of incompetency, the statute requires that "No appointment of a committee shall be made on evidence which is uncorroborated by the testimony of a medical expert or by a

---

7. The record indicates, however, that he was personally served with notice of the petition by a sheriff's duty on October 22, 1992. The notice stated the date and time of the hearing.

8. Petitioner submits that there is a constitutional mandate which requires use of the least restrictive alternative when incursions upon individual liberty interests are involved. *See Memorial Hosp. v. Maricopa County,* 415 U.S. 250, 267–70, 94 S.Ct. 1076, 1086–88, 39 L.Ed.2d 306 (1974) (right to travel); *O'Brien v. Skinner,* 414 U.S.

524, 533–35, 94 S.Ct. 740, 744–46, 38 L.Ed.2d 702 (1974) (Marshall, J., concurring) (right to vote); *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 642–49, 94 S.Ct. 791, 797–801, 39 L.Ed.2d 52 (1974) (right to procreate); *Carrington v. Rash,* 380 U.S. 89, 95–97, 85 S.Ct. 775, 779–81, 13 L.Ed.2d 675 (1965) (right to vote); *West Virginia Citizens Action Group, Inc. v. Daley,* 174 W.Va. 299, 306–07, 324 S.E.2d 713, 721 (1984) (door-to-door canvassing and solicitation).

certified statement upon affidavit as hereinafter provided." W.Va.Code § 27–11–1(e). That provision further provides that:

> Any physician duly licensed to practice medicine in this state or any state contiguous to this state who is currently treating the individual alleged to be incompetent may file with the county commission his or her certified statement upon affidavit stating that he or she is currently treating the individual and setting forth his or her opinion of the individual's ability to manage his or her business affairs and care for his or her physical well-being, *and stating in detail the grounds for the opinion.*

*Id.* (emphasis supplied). In this case, the treating physician was not at the hearing and the only evidence submitted from this physician was a form document which provided no details to support his conclusions regarding Petitioner's inability to manage his affairs, take care of his physical well-being, or his inability to attend the hearing. Surely, the intention of the Legislature was to require more than a form with three checked boxes to support a determination of an individual's incompetency.

Moreover, a past physical ailment or general infirmity cannot be the sole basis for a finding of incompetency. As discussed in *In re Estate of McPeak,* 53 Ill.App.3d 133, 11 Ill.Dec. 349, 368 N.E.2d 957 (1977),

> In the case at bar, the petitioner's evidence merely established the respondent's weakening of vigor, skill and acuity which is a normal concomitant to advanced years. That respondent also suffered from a heart ailment and a shortness of breath is undisputed by her. However, to simply establish certain disabilities is alone insufficient to support the determination of incompetency, the evidence must also show the respondent's incapability of managing her person or estate. The record is barren of any such evidence. In this regard, the unsubstantiated opinions of petitioner's witnesses, that respondent was not capable of taking care of herself or her affairs, without any reasons given for such conclusions, will not support an adjudication of incompetency.... The capability to manage one's person does not resolve itself upon the question of whether the individual can accomplish tasks without assistance but rather whether the individual has the capability to take care and intelligently direct that all his needs are met through whatever device is reasonably available under the circumstances.

*Id.* at 136, 11 Ill.Dec. at 352, 368 N.E.2d at 960 (citation omitted).

At the center of Petitioner's concerns is the issuance of a finding of incompetence when in fact the individual is neither physically nor mentally incompetent. In the instant case, such an injustice may have occurred. A statement dated November 12, 1993, signed by two treating physicians at the Eldercare facility, states:

> Tom Shamblin is alert, oriented and has the capacity of making informed decisions. He is capable of caring for himself at home, with minimal assistance through home health services and community agencies, such as the Meals on Wheels program and Commission on Aging transportation service. He has stated numerous times over the past ten months that he wishes to return home, however his committee will not agree to this. This man is being kept in this facility against his will and could benefit from community services offered in his home, rather than at this facility.

In striking down an Oklahoma statute which permitted the appointment of a conservator whose function is similar to that of a committee, the court observed:

> If the only purpose of the statute is to allow a person who is, by reason of advanced age or physical incapacity, unable to manage his own property, to voluntarily apply to the court to have a conservator appointed, it is constitutional. *If a purpose of the statute is to allow involuntary intervention in the property affairs of citizens, absent a finding of mental incompetence, it is unconstitutional as it is a clear violation of the State and Federal Constitutional provisions which guarantee every citizen the right to life, liberty and property.*

*In re Conservatorship of Goodman,* 766 P.2d 1010, 1011–12 (Okla.Ct.App.1988) (emphasis supplied).

■ Given the serious implications of an incompetency finding, it has been recognized that:

> The determination of incompetency would seem most inappropriate for summary disposition. 'This proceeding is one of utmost seriousness, involving, as it does, depriving one of the free and normal exercise and use of his personal conduct, liberty and property, and, in the very nature of things, great care should be taken to protect the alleged incompetent and to guard him against being deprived of such substantial and basic rights upon insufficient and unjustified grounds and to guard him against the schemes of designing individuals. *Matter of Burke,* [125 A.D. 889] 891, 110 N.Y.S. 1004.'

*In re Von Bulow,* 122 Misc.2d 129, 131, 470 N.Y.S.2d 72, 73 (1983) (quoting *In re Ginnel,* 43 N.Y.S.2d 232, 235 (Sup.Ct.N.Y.Co.1943)). We similarly conclude that because a finding of incompetency involves deprivation of an individual's exercise of liberty and property rights, a determination of incompetency under West Virginia Code § 27–11–1 cannot be summarily made; such a finding must be established through clear and convincing evidence. *See In re Conservatorship of Edelman,* 448 N.W.2d 542, 546 (Minn.Ct.App. 1989); *In re Von Bulow,* 122 Misc.2d at 130–32, 470 N.Y.S.2d at 73–74 (1983); *In re Forward,* 86 A.D.2d 850, 447 N.Y.S.2d 286 (1982) (standard for appointment of a conservator under New York law is clear and convincing proof).

■ Petitioner submits that age and physical infirmity alone are not sufficient grounds as a matter of constitutional due process to justify a finding of incompetency.[9] Numerous tribunals have concluded that the combination of age and infirmity alone are insufficient from a constitutional standpoint to deprive an individual of his rights of freedom and liberty. *See In re Estate of McPeak,* 53 Ill.App.3d at 136, 11 Ill.Dec. at 352, 368 N.E.2d at 960 (appointment of conservator not justified by advanced age combined with physical problems); *In re Estate of Wagner,*

220 Neb. 32, 35, 367 N.W.2d 736, 739 (1985) (" 'guardian should not be appointed ... simply because ... [person] is aged or infirm or because his mind is to some extent impaired by age or disease' ") (quoting *Cass v. Pence,* 155 Neb. 792, 796–97, 54 N.W.2d 68, 73 (1952)). Likewise, we hold that the statutory requirements for making a determination of incompetency pursuant to West Virginia Code § 27–11–1 are not met simply by a showing of advanced age and past physical problems.

Petitioner raises a jurisdictional issue in contending that the Commission is not the proper body to be making determinations of incompetency. This concern is now moot due to the passage of H.B. 4508 on March 12, 1994, which becomes effective on June 10, 1994, through which the Legislature repealed article eleven, chapter twenty-seven and article ten-a, chapter forty-four of the code and enacted in their place a new chapter, designated chapter forty-four-a, relating to the appointment of guardians and conservators for persons in need of protection. Chapter 44A, entitled the West Virginia Guardianship and Conservatorship Act (the "Act"), contains comprehensive and far-reaching changes to the prior system of guardian appointment, one of which is the vesting in the circuit courts of exclusive jurisdiction "of all matters involving determinations of mental incompetency, mental retardation or mental handicap, including the jurisdiction of any proceedings pending as of such effective date." W.Va.Code § 44A–1–2(c).

With the objective of employing the least restrictive form of guardianship needed, the Act recognizes the need for differing degrees of protection. For example, the court may determine that the individual who is the subject of the proceedings is only in need of financial supervision and thereby, appoint a conservator. The Act also provides for the appointment of a limited guardianship or a limited conservatorship, which involves the fulfillment of only those duties that are expressly delineated by court order. The Act sets forth in detail what should be included in

---

9. He further contends that to the extent the statutory definition of "unable to care for one's physical well-being" does not require a finding of mental incompetency, the statute is overbroad and unconstitutional. W.Va.Code § 27–11–1(d).

a petition seeking the appointment of a guardian, as well as who may file the petition. W.Va.Code § 44A–2–2. An evaluatory report completed by a licensed physician or psychologist concerning the condition of the alleged protected person is required to be filed along with the petition. W.Va.Code § 44A–2–3. Besides setting forth at length the expected duties and areas of concern for appointed legal counsel, the Act requires that such individuals complete mandatory educational training within thirty days of the court's determination that the individual who is the subject of proceedings under the Act is a protected person.[10] W.Va.Code §§ 44A–2–7, –1–10.

After reviewing the Petitioner's claims, we conclude that insufficient evidence was adduced at the hearing before the Commission to render a finding of incompetency concerning Mr. Shamblin. Given the enactment of chapter 44A of the West Virginia Code, we remand this matter to the Jackson County Circuit Court for further proceedings to determine whether Petitioner was properly determined to be incompetent pursuant to West Virginia Code § 27–11–1. Dependent upon the outcome of that proceeding, Petitioner may choose to file a motion under the newly-enacted Chapter 44A to remove the appointed guardian, or dependent upon the evidence and circumstances, less all-encompassing measures may be directed to assist Mr. Shamblin with his health, personal, or financial affairs. See W.Va.Code § 44A–4–6.

Based on the foregoing opinion, the writ of habeas corpus is granted to permit the case to be remanded to the Jackson County Circuit Court[11] for further proceedings consistent with this decision.

Writ granted as moulded.

---

**10.** A "protected person" is defined under the Act as:

an adult individual, eighteen years of age or older, who has been found by a court, because of mental impairment, to be unable to receive and evaluate information effectively or to respond to people, events, and environments to such an extent that the individual lacks the capacity: (A) To meet the essential requirements for his or her health, care, safety, habilitation, or therapeutic needs without the assistance or protection of a guardian; or (B) to manage property or financial affairs or to provide for his or her support or for the support of legal dependents without the assistance or protection of a conservator. A finding that the individual displays poor judgment, alone, will not be considered sufficient evidence that the individual is a protected person within the meaning of this subsection.
W.Va.Code 44A–1–4(3).

**11.** Based on the enactment of Chapter 44A of the West Virginia Code, which becomes effective on June 10, 1994, the circuit courts now have exclusive jurisdiction of matters such as these involving the appointment of guardians or conservators. See W.Va.Code § 44A–1–2(c).