466 S.E.2d 556

**Philip C. BUCKLER, Jr., Plaintiff Below, Appellee,**

v.

**Lucy M. BUCKLER, Defendant Below, Appellant.**

**No. 22712.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 13, 1995.

Decided Dec. 15, 1995.

---

Cinda L. Scales, Martinsburg, for Appellee.

F. Samuel Byrer, Nichols & Skinner, L.C., Charles Town, for Appellant.

PER CURIAM:

This is an appeal by Lucy M. Buckler (hereinafter "the Appellant") from a February 2, 1994, order of the Circuit Court of Berkeley County denying the Appellant's Rule 60(b) motion[1] to set aside a previous order approving a written property settlement agreement executed by the Appellant and her former husband, Appellee Philip C. Buckler, Jr. The Appellant contends that the lower court erred by accepting a settlement agreement to which the Appellant did not assent. We conclude that the lower court abused its discretion in failing to set aside the initial order approving the settlement agreement, and we reverse and remand this matter for additional consideration.

### I.

On November 24, 1991, the Appellant and the Appellee signed a written property settlement agreement against her lawyer's advice.[2] On November 27, 1991, the divorce was filed by the Appellee, and the Appellant counterclaimed seeking equitable distribution and alimony.[3] In February 1992, allegedly due to threats made to her by the Appellee[4], the Appellant discharged her attorney and abandoned her counterclaim against the Appellee. Based upon his perception of the Appellant's mental state and potential inability to effectively represent herself in the divorce, her attorney, Mr. Robert Aitcheson, contacted the West Virginia State Bar (hereinafter "the Bar") and requested a recommendation regarding appropriate action. The Bar suggested the appointment of a guardian ad litem for the Appellant, and Mr. Aitcheson moved the family law master to appoint a guardian ad litem for the Appellant. The family law master appointed attorney James B. Rich, III, as guardian ad litem for the Appellant on March 25, 1992.

---

1. Rule 60(b) of the West Virginia Rules of Civil Procedure provides, in pertinent part, that a court may relieve a party from a final order on the basis of:

   (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence ... (3) fraud ... misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied ... (6) any other reason justifying relief from the operation of the judgment.

2. The Appellant had sought the advice of her counsel, Mr. Aitcheson, prior to the execution of the November 1991 agreement, and he had instructed her not to sign any agreement without first allowing him to review it.

3. The parties had been married for approximately 27 years and had three children, all emancipated.

4. The Appellee was allegedly threatening the Appellant regarding alienation from her children and grandchildren.

On April 13, 1992, the Appellant was presented with a second written property settlement agreement and both parties signed this agreement in the presence of guardian ad litem Mr. Rich.[5] This agreement provided that the Appellant would receive the family home and a rental home; notes secured by deeds of trust on homes the family business had built [6]; property in Tucker County which the Appellant had inherited from her parents; forty-two acres of property in Berkeley County; and $55,000 in cash. The agreement further provided that the Appellee would receive notes secured by deeds of trust on homes the family business had built, allegedly worth approximately $182,000; seventy-three acres of property in Slanesville, West Virginia; various personal property; and $53,000 in cash. On September 16, 1992, the lower court entered an order approving the April 13, 1992, property settlement agreement. That order specifically stated the court's conclusion that the agreement was fair and equitable "according to the circumstances of the parties, and that the agreement was not obtained by fraud, duress or other unconscionable conduct by one of the parties . . . ."

During a May 1993 hearing on the Appellant's Rule 60(b) motion to set aside the September 16, 1992, order, Mr. Rich testified that he performed no investigation or discovery prior to his appearance at the April 13, 1992, hearing, and that he did not move for a continuance in order to more adequately familiarize himself with the case. He testified further that he did not feel that it was his responsibility to assess the fairness of the agreement, but only to protect the Appellant's procedural rights. He stated that he did not represent the Appellant as if he were her lawyer, that no financial disclosures regarding the value of the family business were filed or requested, and that he was unfamiliar with the family finances. On February 2, 1994, the lower court denied the Appellant's

Rule 60(b) motion, and the Appellant now appeals to this Court.

## II.

■ We are confronted here for the first time with the issue of a guardian ad litem's responsibility when his client is an adult in a domestic relations context who has not been adjudicated incompetent, but who is acting in a manner potentially adverse to her interests. The law around the country relating to the role of a guardian ad litem as opposed to legal counsel seems to have more exceptions than general rules. It is generally recognized that courts should "appoint guardians ad litem for parties litigant when reasonably convinced that a party litigant is not competent, understandingly and intelligently, to comprehend the significance of legal proceedings and the effect and relationship of such proceedings in terms of the best interests of such party litigant." *Graham v. Graham*, 40 Wash.2d 64, 240 P.2d 564, 565 (1952).

A guardian ad litem may be necessary to stand in the place of one who has an actual legal incapacity and to make decisions for an incompetent ward that are determined by the guardian ad litem to be in the incompetent's best interests. The Supreme Court of Nebraska focused on the difference between a guardian ad litem and an attorney in *Orr v. Knowles*, 215 Neb. 49, 337 N.W.2d 699 (1983):

It is not the role of an attorney acting as counsel to independently determine what is best for his client and than act accordingly. Rather, such an attorney is to allow the client to determine what is in the client's best interests and than act according to the wishes of that client within the limits of the law.

337 N.W.2d at 702. "A guardian ad litem, on the other hand, has the duty to determine the best interests of his or her ward without necessary reference to the wishes of the ward." *In re C.W.*, 226 Neb. 719, 414

---

5. Mr. Rich apparently met his client just prior to the hearing, and according to a September 16, 1992, order, he expended "one half hour for his duties as guardian ad litem."

6. The family business owned by the parties consisted of the construction and sale of homes in

the Eastern Panhandle of West Virginia. Although there is no evidence in the record regarding the value of the family business, the Appellant's first attorney, Mr. Aitcheson, estimated its worth at $750,000 to $1,000,000.

N.W.2d 277, 279 (1987). However, it may be a great disservice to repose this actual decision-making authority in a guardian ad litem for a person who may have mental or emotional problems, but has not been adjudicated incompetent. In *Graham*, for instance, the Supreme Court of Appeals of Washington, in addressing a writ of prohibition to prevent appointment of a guardian ad litem to represent a defendant in a divorce action, explained that "[t]here is something fundamental in the matter of a litigant being able to use his personal judgment and intelligence in connection with a lawsuit affecting him, and in not having a guardian's judgment and intelligence substituted relative to the litigation affecting the alleged incompetent." 240 P.2d at 566.

In many instances and in many contexts, lawyers are appointed to fulfill the dual missions of representing a client with the same diligence normally expected of a legal advocate, as well as the supplementary duty to the court to assess the best interests of his ward. In other words, the lawyer/guardian may perform "a dual role of providing information to the court to enable it to pass on the reasonableness of a settlement, while at the same time protecting the ward's interests by zealous advocacy and thorough, competent representation." *Collins on Behalf of Collins v. Tabet*, 111 N.M. 391, 806 P.2d 40, 49 (1991).

Rule XIII of the West Virginia Rules for Trial Courts of Record addresses the general obligations of individuals appointed as guardians ad litem and requires a guardian ad litem to make a full and independent investigation of the facts of the case with which he or she is affiliated. *Id.* Specifically, Rule XIII provides as follows:

Any guardian ad litem shall make a full and independent investigation of the facts involved in the proceeding; and either by his testimony made of record, or by full and complete answer therein, make known to the court his recommendations, concerning the action sought in the proceedings unless otherwise ordered or instructed by the court.

*Id.* The case law in West Virginia suggests that, in the abuse and neglect context, a dual role is anticipated if the individual whose representation is at issue is under some legal disability. In *In re Scottie D.*, 185 W.Va. 191, 406 S.E.2d 214 (1991), we addressed the responsibilities of a guardian ad litem with respect to infant children and explained that a guardian ad litem had the duty to represent his or her ward as effectively as if the guardian had been in a normal lawyer-client relationship. *Id.* at 198, 406 S.E.2d at 221; *see also* Syl.Pt. 4, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Our seminal case on the role of the guardian ad litem in abuse and neglect cases is *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993), wherein we clothed the guardian ad litem with all the same duties and responsibilities imposed upon the attorney charged with the effective representation of a child. *Id.* at 35–39, 435 S.E.2d at 173–77. Similarly, pursuant to our decision in *Jeffrey R.L.*, when a guardian ad litem is appointed to represent an adult, that guardian is charged with the duty "to provide competent representation to ... [his] client, and to act with reasonable diligence and promptness in representing ... [his] client." *Id.* at 39, 435 S.E.2d at 177 and Syl.Pt. 5. Encompassed in this duty is the guardian's obligation to effectively represent his client at every stage of the proceedings up to and including an appeal. *See id.* at 38–39, 435 S.E.2d at 176–77.

Rule 1.14 of the West Virginia Rules of Professional Conduct provides:

(a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

(b) A lawyer may seek the appointment of a guardian or take other protective action with respect to a client, only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest.

The comment to that Rule is also instructive. It provides in pertinent part:

The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters. When the client is a minor or suffers from a mental disorder or disability, however, maintaining the ordinary client-lawyer relationship may not be possible in all respects. In particular, an incapacitated person may have no power to make legally binding decisions. Nevertheless, a client lacking legal competence often has the ability to understand, deliberate upon, and reach conclusions about matters affecting the client's own well being.

The Rules of Professional Conduct further seem to suggest that if a lawyer determines that there is a conflict in this dual representation, he or she may go to the court and seek the appointment of a guardian ad litem.[7] Similarly, a lawyer appointed in the domestic relations context occupies this dual role until and unless a conflict arises. If a conflict arises, the lawyer may go to the court and seek an additional appointment of a guardian ad litem, pursuant to Rule 1.14 of the Rules of Professional Conduct.

■■■ Clearly, under any interpretation of the proper function of a guardian ad litem, the lawyer appointed guardian ad litem here did not live up to even his minimum responsibilities. In discussing the appointment of a guardian ad litem to protect the interests of a minor, the Supreme Court of New Mexico explained as follows:

Appointment as guardian ad litem of a minor is a position of the highest trust and no attorney should ever blindly enter an appearance as guardian ad litem and allow a matter to proceed without a full and complete investigation into the facts and

law so that his clients will be fairly and competently represented and their rights fully and adequately protected and preserved.

*Bonds v. Joplin's Heirs,* 64 N.M. 342, 328 P.2d 597, 599 (1958).

A similar duty existed in the instant case, and the proper functions of a lawyer or of a guardian ad litem were essentially the same. The record reflects that the guardian ad litem appointed in this matter admitted that he made no independent investigation of the facts and that he did not represent the Appellant as he would have done had she been his client in a traditional attorney-client relationship. There is nothing in the record to indicate that the guardian at litem attempted to ascertain whether the Appellant understood her rights and whether she was competent from a legal standpoint to make decisions in these matters.

The Appellant also emphasizes that the lower court, independent of the guardian ad litem, was obligated to require financial disclosure by the parties. Specifically, administrative orders of the Circuit Court of Berkeley County, dated January 25, 1985, and June 24, 1988, required the filing of financial disclosures. The 1985 order required parties to domestic relations matters involving financial evidence to submit disclosure of financial data upon specified forms no later than five days prior to the hearing thereon. The 1988 order required financial disclosure in domestic relations proceedings involving child or spousal support. West Virginia Code § 48–2–33(a) (1991), in effect at the time this matter was considered below, also permitted a lower court to require the parties to make financial disclosures.[8] That section provided, in pertinent part, as follows:

> If a legal representative has already been appointed for the client, the lawyer should ordinarily look to the representative for decisions on behalf of the client. If a legal representative has not been appointed, the lawyer should see to such an appointment where it would serve the client's best interest.

**7.** Additional comment to Rule 1.14 indicates that:

> The fact that a client suffers a disability does not diminish the lawyer's obligation to treat the client with attention and respect. If the person has no guardian or legal representative, the lawyer often must act as de facto guardian. Even if the person does have a legal representative, the lawyer should as far as possible accord the represented person the status of client.

**8.** West Virginia Code § 48–2–33 was revised in 1993 and presently requires all parties in all divorce actions to fully disclose their assets and liabilities within forty days after the service of

In addition to any discovery ordered by the court pursuant to rule eighty-one of the rules of civil procedure, the court may, *or upon pleadings or motion of either party, the court shall,* require each party to furnish, on such standard forms as the court may require, full disclosure of all assets owned in full or in part by either party separately or by the parties jointly.

W.Va.Code § 48–2–33(a).

Despite the administrative orders requiring the disclosure of financial data and the statutory authority of the lower court to require such disclosure, the only financial statements filed in the present case reflected only the parties' incomes and did not reflect their assets, liabilities, or any appraisal of the value of the family business.

■ We find that the Appellant's guardian ad litem performed inadequately by failing to investigate the financial positions of the parties, by failing to enforce the administrative orders' requirement of financial disclosure, and by failing to seek financial disclosure through West Virginia Code § 48–2–33. It was necessary to obtain full financial disclosure before the guardian ad litem could even advise Appellant of her rights. As we emphasized in *In re Christina L.,* Rules 1.1 and 1.3 of the West Virginia Rules of Professional Conduct require an attorney to provide competent representation to a client and to act with reasonable diligence in protecting the interests of the client. 194 W.Va. at 448, 460 S.E.2d at 694, Syl.Pt. 4. That obligation is no less applicable where the attorney serves as a guardian ad litem. As we recently explained in *Jackson General Hospital v. Davis,* 195 W.Va. 74, 464 S.E.2d 593 (1995), "[t]he purpose of an order appointing a guardian ad litem is to protect the person under disability." 195 W.Va. at 77, 464 S.E.2d at 596.

■ Had the guardian ad litem in the present case thoroughly investigated the facts of this matter, explained the legal issues to the Appellant, satisfied himself that the Appellant was able to understand his advice, informed her of the ramifications of available alternatives, and advised the court of the position serving the best interests of the Appellant, we could not fault the guardian if his client still sought to engage in a course of conduct not advised by him.[9] If a client persists in acting against his interests, the guardian ad litem should place this fact on the record before the court, so that the court may make whatever inquiry it sees fit to ascertain the client is competent to make this decision herself. There is no indication, however, that the guardian in this matter attempted to assess his ward's emotional state, her ability to comprehend the nature of the legal proceedings, or her rights thereunder. A thorough, independent investigation was not conducted, and the guardian failed both in his duty to provide the court with adequate information and in his duty to adequately protect and advocate the interests of the Appellant.

■ The shortcomings of this matter were exacerbated by the failure of the lower court to follow the mandates of the administrative orders requiring disclosure and the resulting absence of any meaningful financial disclosure. We explained the following at syllabus point one of *Hamstead v. Hamstead,* 178 W.Va. 23, 357 S.E.2d 216 (1987),[10] *overruled in part on other grounds, Roig v. Roig,* 178 W.Va. 781, 364 S.E.2d 794 (1987):

> *W.Va.Code,* 48–2–33 [1984], requires a full disclosure of one spouse's financial assets to the other spouse at the time of divorce, and contemplates a meaningful hearing on the subject of equitable distribution of property at which the spouse submitting financial data may be cross-

summons. *See State ex rel. Erickson v. Hill,* 191 W.Va. 320, 445 S.E.2d 503 (1994) (regarding disclosure requirements in context of divorce action).

9. We emphasize that this the Appellant was not adjudged incompetent, and the role of the guardian in this case must be distinguished from a situation in which a guardian is appointed to act

on behalf of an incompetent person. In the present case, the guardian had a responsibility to advise the client of her rights and protect her interests to the extent possible.

10. In *Hamstead,* the wife had filed a motion for disclosure of assets pursuant to West Virginia Code § 48–2–33 (1984). *See* 178 W.Va. at 24, 357 S.E.2d at 217.

examined concerning the nature, origin and amount of assets.

178 W.Va. at 23, 357 S.E.2d at 216–17, Syl.Pt. 1. Without the required financial disclosure, the requirement of a "meaningful hearing" is not satisfied.

■ Furthermore, we find nothing to suggest that the principles of West Virginia Code § 48–2–33 or the requirements of the Berkeley County administrative orders are effaced or reduced by the existence of a written separation agreement in a divorce case. West Virginia Code § 48–2–16(a) (1984),[11] dealing with the effect of separation agreements, makes no implication that the presence of a separation agreement excuses the lack of financial disclosure. That section provides that a lower court shall conform its order to the separation agreement of the parties "if the court finds that the agreement is fair and reasonable, and not obtained by fraud, duress or other unconscionable conduct by one of the parties …" and also finds that the parties have expressed themselves in terms which would be enforceable by a court in future proceedings. *Id.* As we recently explained the following in pertinent part of syllabus point 2 of *Preece v. Preece,* 195 W.Va. 460, 465 S.E.2d 917 (1995), West Virginia Code § 48–2–16(a) does not "carve any exemption from disclosure for divorces in which separation agreements are present." In fact, the requirements of West Virginia Code § 48–2–16(a) actually enhance the Appellant's position in this matter. Moreover, this Court has intimated that the lower court's determination of "fair and reasonable" must be based upon "disclosure of the financial background of the parties sufficient to justify the conclusion of the court or master." *Gangopadhyay v. Gangopadhyay,* 184 W.Va. 695, 699, 403 S.E.2d 712, 716 (1991).[12] Where no meaningful financial disclosure is made, a determination of the fairness or reasonableness of a settlement agreement is difficult or impossible.

Other jurisdictions have enacted similar legislation providing for court review of the fairness or reasonableness of separation agreements. In *Sands v. Sands,* 188 Conn. 98, 448 A.2d 822 (1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 792, 74 L.Ed.2d 997 (1983), the Supreme Court of Connecticut held that under Connecticut General Statutes § 46b–66, a trial court is not bound by terms of the parties' agreement on alimony if the court determines that the stipulation is not fair and equitable. 448 A.2d at 824–25. Section 46b–66 provides that in any case wherein the parties submit an agreement concerning child support, alimony or the disposition of property, "the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances." Conn.Gen.Stat.Ann. § 46b–66 (West 1986).

North Carolina Statute § 50–20(d) also provides that parties to a divorce may, by written agreement, "provide for distribution of the marital property in a manner deemed by the parties to be equitable…." N.C.Gen.Stat. § 50–20(d) (1987). In *McIntosh v. McIntosh,* 74 N.C.App. 554, 328 S.E.2d 600 (1985), the North Carolina Supreme Court explained that to be valid under that statute, a separation agreement must be in all respects fair, reasonable and just, and must have been entered into without coercion or the exercise of undue influence, and with full knowledge of all the circumstances, conditions, and rights of the contracting parties. *Id.* at 602.

A party's lack of legal representation has also been delineated as a ground for heightened scrutiny of separation agreements. For instance, in *Robbins v. Robbins,* 3 Neb.App. 953, 536 N.W.2d 77 (1995), the Court of Appeals of Nebraska noted that one party "was not formally represented by counsel at the time of the execution of the property

**11.** Although West Virginia Code § 48–2–16(a) has subsequently been amended, those amendments do not affect the outcome of this matter.

**12.** While the facts of *Gangopadhyay* concerned the enforcement of an oral settlement agreement, the principles we announced regarding an appropriate determination of the fairness of a settlement agreement are equally applicable to the present case. *See* 184 W.Va. at 696, 403 S.E.2d at 713.

settlement agreement or its approval by the district court. Particularly under those circumstances, the trial court has an affirmative duty to scrutinize the transaction...." *Id.* at 85.

 West Virginia Code § 48–2–16(a) essentially creates a formula under which court approval of a separation agreement is a condition precedent to the incorporation of that agreement into a final divorce decree. A necessary corollary to the requirement of a finding of fairness or reasonableness is an investigation sufficient to justify such a finding. Especially when interpreted in conjunction with the financial disclosure provisions of West Virginia Code § 48–2–33, West Virginia Code § 48–2–16(a) compels a lower court to investigate the financial resources or circumstances of the parties and to accumulate clear and definitive evidence regarding such financial concerns and the value of properties being apportioned.

Based upon the inadequacy of the guardian ad litem's performance and the absence of financial disclosure required by the administrative orders in the present case, we find that the lower court abused its discretion in initially approving the settlement agreement and in subsequently failing to set aside that order upon the request of the Appellant. We therefore reverse and remand this matter to the Circuit Court of Berkeley County for further proceedings including complete financial disclosure.

Reversed and remanded.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.