482 S.E.2d 192

**STATE of West Virginia ex rel. Marie M. McMAHON, Petitioner,**

v.

**Honorable John M. HAMILTON, Special Judge of the Circuit Court of Morgan County, and John P. Adams, et al., Respondents.**

**No. 23422.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 1996.

Decided Dec. 13, 1996.

Marie M. McMahon, Berkeley Springs, pro se.

Lucien G. Lewin, Steptoe & Johnson, Martinsburg, Joanna I. Tabit, Steptoe & Johnson, Charleston, for Respondents, John P. Adams, Honorable Donald C. Hott, Glen

Stotler, Donald Sharp, Morgan County Fire Board and Howard Trittipoe.

Paul B. Weiss, Martin & Seibert, Martinsburg, Attorney for Respondents, Paul B. Weiss, Susan R. Snowden, Daniel T. Booth and Martin & Seibert, L.C.

McHUGH, Chief Justice:

*Pro se* petitioner Marie McMahon, invoking this Court's original jurisdiction pursuant to *W. Va.Code*, 53–1–3 [1933], seeks to prohibit enforcement of an order entered April 8, 1996 in the Circuit Court of Morgan County by the Honorable John M. Hamilton, special judge, a respondent herein. In that order, Judge Hamilton, upon the motion of respondents Martin & Seibert, L.C., Susan R. Snowden, Daniel T. Booth and Paul B. Weiss, ordered petitioner to undergo a psychiatric examination to determine whether she is mentally competent to proceed with the underlying civil action instituted by her against respondents and others such that a guardian ad litem should be appointed to protect her interests.

This Court [1] has before it the petition, the responses thereto, and all matters of record. For reasons discussed below, petitioner Marie McMahon's request that this Court prohibit enforcement of that portion of the circuit court's order directing her to undergo a mental examination is denied. However, this Court finds that it was error for the circuit court to direct the appointed psychiatrist to transmit copies of the resulting report to the respondents herein. Accordingly, enforcement of that portion of the circuit court's order is prohibited.

## I.

### A.

In 1984, petitioner, acting pursuant to a general power of attorney granted her by Bart and Alice Whirley, instituted a lawsuit against six defendants in the Circuit Court for the City of Winchester, Virginia, attacking the probate of the estate of one Ann Schrader. By order of October 15, 1986, that lawsuit was dismissed.

Subsequently, Charles G. Aschmann, Jr., the attorney hired by petitioner in the above-mentioned probate action, sued petitioner and the Whirleys for payment of $7,000 in legal fees associated with that action. Petitioner filed a counterclaim against Mr. Aschmann, alleging legal malpractice. By order of February 9, 1987, the Circuit Court for the City of Alexandria, Virginia granted Mr. Aschmann's motion for a directed verdict [2] as well as his motion to strike petitioner's counterclaim. The court further ordered petitioner to pay to Mr. Aschmann $7,000 plus interest from January 5, 1987. Petitioner never appealed that judgment order.

The remaining facts of this case consist primarily of a multitude of lawsuits instituted by petitioner, *pro se*, in a variety of state and federal courts against a various medley of defendants, among them, federal and circuit court judges, lawyers and clerks of court. Petitioner's litigious behavior is rooted in her adamant belief that she was denied her constitutional right to a trial by jury when the above-described directed verdict was rendered against her for $7,000 in unpaid legal fees. Petitioner contends that the defendants against whom she has asserted, and in some cases, reasserted, this claim have all conspired to deprive her of due process. Though recitation of petitioner's many court actions is repetitive and, at times, confusing, we believe it necessary to the ultimate resolution of this case, particularly with regard to respondents' position that petitioner does not comprehend the meaning and effect of the

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. According to the court's February 9, 1987 order, though a jury was empaneled to hear the case, the court directed a verdict for Mr. Aschmann after all of the parties presented their cases. We note that Mr. Aschmann's motion for voluntary nonsuit against the Whirleys was granted and that the action against them was dismissed without prejudice.

countless lawsuits she has instituted for more than a decade.

### B.

Pursuant to the Full Faith and Credit clause of the *United States Constitution*, art. IV, § 1, the Circuit Court of Morgan County entered the above-described judgment of $7,000 for nonpayment of legal fees against petitioner and in favor of Mr. Aschmann. The circuit court further denied petitioner's counterclaim that the $7,000 judgment was void on the ground that, by directing a verdict in Mr. Aschmann's favor, the Circuit Court for the City of Alexandria, Virginia had denied petitioner her constitutional right of trial by jury.

Petitioner subsequently filed petitions for appeal with this Court regarding the Morgan County Circuit Court's dismissal of her counterclaim against Mr. Aschmann and the entry of the $7,000 judgment for nonpayment of legal fees in favor of Mr. Aschmann. This Court denied petitioners' petitions for appeal by orders of April 26, 1989 and July 9, 1990. By order of December 10, 1990, the Supreme Court of the United States denied petitioner's petition for writ of certiorari of this Court's July 9, 1990 order.

In the meantime, petitioner instituted an action in the United States District Court for the Eastern District of Virginia in an effort to collaterally attack the $7,000 judgment for nonpayment of legal fees. In that case, petitioner named as a defendant the Honorable Donald Kent, the judge who presided over the nonpayment of legal fees proceeding and who signed the order awarding Mr. Aschmann $7,000 in legal fees. Petitioner also named as defendants the attorney who represented Mr. Aschmann and whose motion for a directed verdict was granted in that case, as well as the attorney who also represented Bart and Alice Whirley, on whose behalf

petitioner instituted the original probate action. Petitioner alleged that these defendants conspired to deny her the constitutional right to a trial by jury. This action was dismissed as to all defendants. Petitioner's subsequent appeal of this order to the Fourth Circuit Court of Appeals was denied, as was her petition for writ of certiorari to the Supreme Court of the United States.

Petitioner, at the same time,[3] instituted an action against Mr. Aschmann in the United States District Court for the Northern District of West Virginia in yet another effort to attack the $7,000 judgment. This action was transferred to the United States District Court for the Eastern District of Virginia where Mr. Aschmann's motion for summary judgment was granted. Though petitioner's action was dismissed with prejudice, she nevertheless filed a "motion for reconsideration" and a motion to vacate the judgment awarding Mr. Aschmann $7,000 in unpaid legal fees. In its order of March 4, 1988, the district court denied petitioner's motions, clearly stating that it "is bound to give to the prior state court judgment the same preclusive effect which it would receive in the courts of Virginia[,]" and that it "do[es] not have subject matter jurisdiction to review the final judgments or decisions of state courts." Petitioner filed a "petition for rehearing" in the United States Court of Appeals for the Fourth Circuit, which petition was denied by order of August 19, 1988.

Not to be discouraged by these failed court actions, petitioner then instituted a lawsuit in the United States District Court for the Western District of Virginia against the following defendants, alleging, *inter alia*, that they had all conspired to deny her the constitutional right to a trial by jury in all of her prior claims: five of the six defendants in the original probate action in Winchester, Virginia, the presiding judge, the clerk of the court, and the four attorneys who participat-

---

**3.** Also during this time, petitioner filed a legal malpractice action in Morgan County Circuit Court against attorney David H. Savasten who, along with Mr. Aschmann, represented Bart and Alice Whirley in the original probate action. The circuit court, the Honorable Patrick G. Henry, III, judge, dismissed petitioner's action and by order of April 18, 1990, this Court refused petitioner's petition for appeal. Petitioner subse-

quently filed suit in the United States District Court for the Northern District of West Virginia against Judge Henry, Mr. Savasten and Mr. Savasten's two attorneys, Claudia Bentley and Richard L. Douglas, alleging that they conspired against her to violate her constitutional rights. This action was dismissed, which dismissal was affirmed by the United States Court of Appeals for the Fourth Circuit.

ed therein, including Mr. Aschmann; Judge Donald Kent, who ordered petitioner to pay Mr. Aschmann $7,000 in unpaid legal fees, as well as the two attorneys who participated in the unpaid legal fees case; the Honorable Albert V. Bryan, Jr. of the United States District Court for the Eastern District of Virginia, who presided over and dismissed petitioner's previous action against Judge Kent, as well as both the clerk of that court and counsel for one of the defendant attorney's in that action. Petitioner also named as defendants Judge Patrick Henry of the Circuit Court of Morgan County, who presided over the litigation concerning attorney David Savasten, see n. 3, supra, and who accorded full faith and credit to the $7,000 judgment awarded Mr. Aschmann. Petitioner further named as defendants the Honorable William Kidd of the United States District Court for the Northern District of West Virginia who dismissed petitioner's previous action against attorneys Savasten, Bentley and Douglas, see n. 3, supra, as well as the Honorable Richard Williams of the United States District Court for the Eastern District of Virginia, who likewise dismissed petitioner's action against Mr. Aschmann.[4] Finally, petitioner named as defendants attorneys Clarence E. Martin, III and Daniel T. Booth[5] for their participation in both entering Mr. Aschmann's $7,000 judgment for nonpayment of legal fees in Morgan County Circuit Court and her action against Mr. Aschmann before Judge Williams.

By order of January 14, 1993, the Honorable B. Waugh Crigler, United States Magistrate Judge, recommended dismissal of all of petitioners' claims against all of the named defendants.[6] By subsequent order, entered July 27, 1993, Magistrate Judge Crigler, upon determining that petitioner "has engaged in litigation that is frivolous, unnecessary, vexatious, and oppressive to all defen-

dants in this case[,]" recommended that monetary sanctions of approximately $42,-378.77 be levied against her pursuant to Rule 11 of the *Federal Rules of Civil Procedure.* Magistrate Judge Crigler further recommended that petitioner be enjoined "from filing, instituting, continuing or prosecuting any civil action in this or in any other federal court without first obtaining leave of this court.... In no way, however, should this Order be construed as prohibiting [petitioner] from pursuing any direct appeal of the decisions by this court or by the Fourth Circuit Court of Appeals in this case[.]" Magistrate Judge Crigler's recommendations were adopted by orders entered by the Honorable James H. Michael, Jr., Judge of the United States District Court for the Western District of Virginia. On appeal, the United States Court of Appeals for the Fourth Circuit affirmed both of these orders.

During the pendency of the above proceeding, petitioner instituted *another* action in the Circuit Court of Berkeley County, West Virginia, seeking to vacate the $7,000 judgment previously entered against her in the Circuit Court of Morgan County and to vacate "the lien thereinafter entered ... for the unsatisfied amount of said judgment." Named as defendants were the Honorable Christopher Wilkes, who entered an order permitting the sale of petitioner's home to satisfy the $7,000 judgment, and Clarence E. Martin, III and Daniel T. Booth, attorneys who participated in prior proceedings concerning that judgment. Finding, *inter alia,* that petitioner's motion "constitutes a collateral attack on a final judgment of a court of competent jurisdiction[,]" Judge Donald C. Hott[7] denied petitioner's motion by order entered October 28, 1993. Petitioner's petition for appeal of this order was refused by this Court on April 6, 1994.

---

**4.** This action was originally brought in the United States District Court for the Northern District of West Virginia but was transferred to the Eastern District of Virginia.

**5.** Mr. Booth is a respondent herein. *See* discussion, *infra.*

**6.** In its January 14, 1993 order, the court found it necessary to fully articulate the reasons for its

dismissal of petitioner's claims in the hope that, "[i]f this action does anything, ... it will bring to [petitioner's] attention the proposition that the right to a trial by jury in a civil case, under the Constitution of the United States, is a qualified right, not an absolute one." (footnote omitted).

**7.** Judge Hott is a respondent herein. *See* discussion, *infra.*

Upon motion by Mr. Martin and Mr. Booth, Judge Hott permanently enjoined petitioner "from instituting in any court of this State any action at law or in equity [against them] based in whole, in part, or in any manner whatsoever upon allegations that the judgment of the Circuit Court for the City of Alexandria, Virginia ... is in any manner void, voidable or otherwise invalid[.]" Judge Hott reasoned that,

> [b]ased upon ... [petitioner's] pattern of abusive and oppressive litigation, it may be anticipated that [petitioner] will accept neither the judgment of the United States District Court for the Western District of Virginia nor the judgment of the Circuit Court for Berkeley County, West Virginia as final, valid, binding and dispositive of her claims against the Plaintiffs herein, but is likely in the future to embroil the Plaintiffs in further repetitious and frivolous litigation predicated upon her unfounded contention that the judgments of the Circuit Court for the City of Alexandria and the Circuit Court for Morgan County in the respective cases of *Aschmann v. McMahon* are invalid and that the Plaintiffs' actions in obtaining or enforcing said judgments are tortious in nature.

8. Petitioner's original complaint was filed August 8, 1995.

9. Judge Hott was apparently named as a defendant because he dismissed petitioner's most recent lawsuit, issued a permanent injunction against her and made various rulings against her in the proceedings with the Morgan County Fire Board.

10. In her amended complaint, petitioner alleged, *inter alia:*

> Defendants Hott, Martin & Seibert and their attorneys are using any means to enforce a Virginia Judgment that is void (per applicable laws) on its face. Said judgment clearly shows no jury made the decision ... that it was a discretional judgment by the court ... such discretion was not afforded said court with compliance to Constitutions a jurisdictional requirement. He abused his power to rule against the overwhelming evidence in favor of this Plaintiff ... in short, Aschmann was paid $1878.36 to write a complaint he never was able to get a court to accept ... it had to be amended by another attorney subsequently. It is a matter of record and a one page affidavit by local attorney (hereto attached) substantiates a part of the above. Plaintiff was denied completion of the court by that Alexandria court, denied due process and Court abused

By subsequent order entered January 13, 1994, Judge Hott further imposed sanctions against petitioner, pursuant to Rule 11 of the *West Virginia Rules of Civil Procedure,* in the amount of $6,210.01.

In the meantime, petitioner was engaged in proceedings with the Morgan County Fire Board, a respondent herein, relating to her refusal to pay county fire fees. The Fire Board placed a lien upon her home for the amount of fees owed, which amount was settled from the proceeds of the sale of petitioner's home upon foreclosure.

In an amended complaint[8] filed in the Circuit Court of Morgan County on March 1, 1996, petitioner instituted the underlying civil action in this case, naming as defendants John P. Adams, the Honorable Donald C. Hott,[9] Glen Stotler, Donald Sharp, Martin & Siebert, L.C., Daniel T. Booth, Susan Snowden, Paul Weiss, the Morgan County Fire Board and Howard Trittipoe. In that complaint, petitioner again sought, *inter alia,* to collaterally attack the $7,000 judgment for nonpayment of legal fees on the ground that she was denied her constitutional right to a trial by jury.[10]

> his power. Defendants Hott and two of Martin & Seibert Attorneys, Weiss & Snowden perpetrated the denial of trial by jury and other acts that violate WV Const. Art. 3, 17 and 3, 10, as well as those of the United States Constitution, Amendments One, Five, Seven and Fourteen on August 9, 1993[.]
>
> Speaking to Plaintiff, Defendant Hott admits on page 34 (transcript) 'You have not got it to trial yet'... which appears to ordinary persons, to be bragging of his power to deny jury trial (in reality to do so violates his own oath of office) and is at the least disrespectful and destructive to the Constitutions he has sworn to uphold and support; he is also ambiguous possibly, when he admits recognition of same by telling Plaintiff 'You are reading the Constitution' (thusly he must know Alexandria Virginia Judgment to be void) but goes on to say 'I have never been a constitutional lawyer, I just work out of the Code of West Virginia, that is about all I can comprehend.' The end result was an injunction to keep this Plaintiff out of court on these matters, which was another abuse of power and process, since the courts are open to all.
>
> ....
>
> This Plaintiff has never submitted a hand written pleading in any of these matters. Per the above and the Constitutions that support

By motion dated August 24, 1995, respondents Martin & Seibert, L.C., Susan R. Snowden, Daniel T. Booth and Paul B. Weiss requested that the Circuit Court of Morgan County "appoint a qualified psychiatrist to determine if [petitioner] is mentally competent to proceed with the present action or if appointment of a guardian *ad litem* to protect her interests is appropriate." Following an April 8, 1996 hearing on the matter, the circuit court found:

> There is no cause or reason to question the general sanity or mental competency of [petitioner].
>
> However, the Court has substantial concern with regard to [petitioner's] mental ability to rationally comprehend and accept matters relating to the present litigation and litigation that has preceded it in other cases, both here and in other venues as reflected by the pleadings and papers filed herein.
>
> Accordingly, the Court finds that good cause has been shown for the appointment of a competent psychiatrist to examine [petitioner] and report back to the Court concerning [petitioner's] ability to proceed with the present action in her own right or whether a guardian ad litem should be appointed.

The court appointed Dr. Bradley Soule to examine petitioner and to report his findings back to the court. The circuit court instructed Dr. Soule "that it requires no general finding of [petitioner's] general competency. Rather, Dr. Soule[11] should limit his evalua-

tion and report to the question of whether [petitioner] is competent to act responsibly with regard to this and other civil actions in which she has been involved and whether the appointment of Guardian ad litem would be in [petitioner's] best interest."

The circuit court further ordered the appointed psychiatrist to "report back to Court within 30 days of the date of this order his findings as to the concerns of the Court heretofore stated. Concomitantly therewith, Dr. Soule shall transmit a copy of this report to all parties hereto. Should Dr. Soule fail to do so the Clerk of the Court is authorized and ordered to provide a copy of Dr. Soule's report to any party hereto requesting same."

It is the enforcement of this order[12] that petitioner seeks to prohibit.[13]

## II.

In syllabus point 2 of *State ex rel. Reed v. Douglass*, 189 W.Va. 56, 427 S.E.2d 751 (1993), we reiterated that which is necessary for this Court to grant a writ of prohibition:

> ' "A writ of prohibition will lie where the trial court does not have jurisdiction or, having jurisdiction, exceeds its legitimate powers." Syllabus Point 3, *State ex rel. McCartney v. Nuzum*, 161 W.Va. 740, 248 S.E.2d 318 (1978).' Syllabus Point 4, *Pries v. Watt*, 186 W.Va. 49, 410 S.E.2d 285 (1991).

Furthermore, in syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W. Va.

---

her actions (as well as stare decisis) she is loyal enough to the Constitutions to fight for their survival but that does not make her psychotic ( nor does she misrepresent ... lie or fail to know what court she is in, as two defendants herein did) she is upset emotionally that SOME judicial officers seem determined to destroy the very foundation of our judicial system ... she does love justice which has not been forthcoming to her YET [.]

**11.** Upon Dr. Soule's subsequent refusal to perform the requested examination, the circuit court appointed another psychiatrist, Dr. Raymond Shapiro. The order appointing Dr. Shapiro has, to date, not been signed or entered.

**12.** Also in its April 8, 1996 order, the circuit court ordered a stay of the underlying civil action

until such time as the appointed psychiatrist has reported to the court. Petitioner immediately filed a petition for a writ of prohibition with this Court and, by order of May 16, 1996, this Court issued a rule to show cause. Oral arguments on the matter were heard on September 25, 1996.

**13.** Subsequent to the filing of this petition for writ of prohibition, this Court, by order of October 21, 1996, refused yet another petition for appeal filed by petitioner. By order of September 15, 1995, the Morgan County Circuit Court granted Mr. Aschmann's motion for summary judgment in his ejectment action against petitioner. Mr. Aschmann had purchased petitioner's home when it was sold to satisfy the $7,000 judgment for unpaid legal fees. The circuit court's September 15, 1995 order ordered petitioner to vacate her former residence.

12, 483 S.E.2d 12 (1996), this Court held:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

### III.

As previously indicated, respondents filed a motion with the circuit court to determine petitioner's mental competency to proceed with the pending civil action instituted by her and to, thereafter, determine if a guardian ad litem should be appointed to protect her interests therein. It is respondents' contention that the circuit court's authority to order petitioner to undergo a psychiatric examination so as to determine her mental ability to rationally comprehend and accept matters relating to the present litigation and litigation that has preceded it is derived from *West Virginia Rule of Civil Procedure* 17(c).

*West Virginia Rule of Civil Procedure* 17(c) [14] authorizes a court to, *inter alia*, appoint a guardian ad litem for an incompetent person not otherwise represented in an action:

> *Infants, incompetent persons, or convicts.*—Whenever an infant, incompetent person, or convict ha[s] a duly qualified representative, such as a guardian, curator, committee or other like fiduciary, such representative may sue or defend on behalf of the infant, incompetent person, or convict. If a person under any disability does not have a duly qualified representative he may sue by his next friend. *The court or clerk* [15] *shall appoint a discreet and competent attorney at law as guardian ad litem for an infant, incompetent person, or convict not otherwise represented in an action, or the court shall make such other order as it deems proper for the protection of any person under disability.*

*Id.* (emphasis and footnote added).

The purpose of "appointing a guardian ad litem is to protect the person under disability." *Jackson General Hospital v. Davis*, 195 W.Va. 74, 77, 464 S.E.2d 593, 596 (1995). Indeed,

> courts should 'appoint guardians ad litem for parties litigant when reasonably convinced that a party litigant is not competent, understandingly and intelligently, to comprehend the significance of legal proceedings and the effect and relationship of such proceedings in terms of the best interests of such party litigant.'

*Buckler v. Buckler*, 195 W.Va. 705, 708, 466 S.E.2d 556, 559 (1995) (*quoting Graham v. Graham*, 40 Wash.2d 64, 240 P.2d 564, 565 (1952)).

---

**14.** *W. Va. R. Civ. P.* 17(c) is substantially similar to *Fed.R.Civ.P.* 17(c). We therefore give due consideration to federal cases interpreting the latter in determining the meaning and scope of our rules. *State v. McGinnis*, 193 W.Va. 147, 158 n. 14, 455 S.E.2d 516, 527 n. 14 (1994); *Painter v. Peavy*, 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994).

**15.** Though *W. Va. R. Civ. P.* 17(c) permits the clerk to appoint a guardian ad litem, its federal counterpart contains no such provision. *See* Marlyn Lugar and Lee Silverstein, *West Virginia Rules of Civil Procedure*, p. 162–63 (1960), for a discussion of the difference between the West Virginia and the federal rule and the reason the West Virginia rule includes the clerk within its provision.

A court's "power to appoint a *guardian ad litem* [under Rule 17(c)] 'has been broadly interpreted and has not been limited by a narrow construction of the words "infant" or "incompetent" person.' Wright & Miller, *Federal Practice & Procedure* § 1570 at 776 (1971)." *Cyntje v. Government of the Virgin Islands*, 95 F.R.D. 430, 432 (D.C.Vi.1982), *aff'd*, 782 F.2d 1027 (3d Cir.1985). *See N.O. v. Callahan*, 110 F.R.D. 637, 649 (D.Mass. 1986); *Huebner v. Ochberg*, 87 F.R.D. 449, 456 (E.D.Mich.1980). A party who has not been adjudicated incompetent may, nevertheless, lack the mental capacity to participate in a matter before the court. In such an instance, under Rule 17(c), a court may appoint a guardian ad litem to protect the interests of such party litigant.[16] *See Helton v. Helton*, 362 So.2d 257, 259 (Ala.Civ.App. 1978); *People In Interest of M.M.*, 726 P.2d 1108, 1119 (Colo.1986); *Callahan*, 110 F.R.D. at 649; *Cyntje*, 95 F.R.D. at 432, 433; *Matter of S.W.*, 158 N.J.Super. 22, 385 A.2d 315, 317 (1978); *Bodnar v. Bodnar*, 441 F.2d 1103, 1104, *cert. denied*, 404 U.S. 913, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971). *See also Buckler*, 195 W.Va. at 708, 466 S.E.2d at 559 (without reference to Rule 17(c), guardian ad litem appointed where adult party to divorce proceeding had not been adjudicated incompetent but had been "acting in a manner potentially adverse to her interests."); *Adoption of Kirk*, 35 Mass.App.Ct. 533, 623 N.E.2d 492, 495 (1993), *review denied*, 416 Mass. 1110, 629 N.E.2d 1004 (1994) ("An individual may be competent for one purpose but not for another.").[17]

When a substantial question exists regarding the mental competency of a party, a court must determine *whether* the party is or is not competent to proceed with the action before it. *See Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir.1989), *aff'd*, 931 F.2d 60 (1991). Only then will the court be able to determine if a guardian ad litem should be appointed under Rule 17(c). *See Id.*

In *Cyntje, supra*, the court determined that

[w]hen the competency of a party is raised, a court may require that party to submit to a psychiatric examination, so that the court may have medical facts on which its decision on the necessity of appointing a *guardian ad litem* can be based.

'The court, as a layman cannot judge the plaintiff's mental stability. It is appropriate that the court be furnished up-to-date information concerning the plaintiff's present mental condition, both in order to consider the many facets of the trial and the proposed relief, and to avoid any risk of finding that the time required for pretrial proceedings and trial might prove futile.'[18]

---

16. We emphasize that this petitioner has not been adjudicated incompetent and that the circuit court, in its April 8, 1996 order, expressly stated that its concern was with regard to petitioner's "ability to proceed with the present action" and that "[t]here is no cause or reason to question [her] general sanity or mental competency [.]" Indeed, "a declaration of incompetency and the resulting appointment of a committee, guardian, or conservator to oversee an individual's affairs may affect [petitioner's] constitutionally-guaranteed liberty interests[,]" *State ex rel. Shamblin v. Collier*, 191 W.Va. 349, 352, 445 S.E.2d 736, 739 (1994), and would implicate Chapter 44A of the West Virginia Code, "West Virginia Guardianship and Conservatorship Act," and its legislatively-derived procedures to determine a person's competency. *See e.g., W. Va. Code*, 44A–2–1, *et seq.* We do not address, in this case, those situations in which a party is either "under an existing guardianship or has otherwise been judicially found to be incompetent." *Thomas v. Humfield*, 916 F.2d 1032, 1033 n. 1 (5th Cir.1990), *aff'd*, 32 F.3d 566 (1994), *cert.*

denied, 513 U.S. 1167, 115 S.Ct. 1138, 130 L.Ed.2d 1098 (1995).

17. *Cf.* syl. pt. 3, *In Matter of Lindsey C.*, 196 W.Va. 395, 473 S.E.2d 110 (1995) ("In abuse and neglect proceedings the appointment of a guardian ad litem is required for adult respondents who are involuntarily hospitalized for mental illness, whether or not such adult respondents have also been adjudicated incompetent.")

18. *Compare Helton*, 362 So.2d at 259, in which the court indicated that in some cases, "it is sufficient that the trial court is apprised of the possibility that a party is incompetent by the pleadings or otherwise. Such notice enables the court to appoint a guardian ad litem to protect the alleged incompetent's interests." Thus, based upon evidence of the party's mental incompetence introduced below, "the trial court could have properly concluded—without an additional mental examination—that the [party] was mentally incompetent and that the appointment of a guardian ad litem was necessary to protect his interests." *Id.*

(footnote added). *Id.*, 95 F.R.D. at 432 (*quoting Swift v. Swift*, 64 F.R.D. 440, 442 (E.D.N.Y.1974)). *See Bodnar*, 441 F.2d at 1104 (a court "is not powerless to ascertain whether a litigant is competent.... Where there is a showing of a substantial question of competency, the Judge with protective restrictions can, in making that determination, require a medical examination.")

In *Cyntje*, not unlike the present case, the court was given good cause to question plaintiff's mental competency "not only because of the nature and substance of [his] complaints, but also because they [were] so numerous and, in substance, alike." *Id.*, 95 F.R.D. at 432. Of the eleven complaints filed by the plaintiff in that case, nine arose out of his allegations that the government of the Virgin Islands illegally denied him permission to operate an express bus service on the islands of St. Thomas and St. John. *Id.* The plaintiff sued various government officials, some more than once, as well as individuals who were, in some way, connected to the processing of his complaints. *Id.*, 95 F.R.D. at 433.

The court in *Cyntje*, upon finding plaintiff's "mental competency to file and prosecute court actions on his own behalf [to be] subject to question[,]" scheduled a hearing in order to question plaintiff regarding the substance of his complaints and to "afford the court an opportunity to observe [his] behavior and lucidity." *Id.*, 95 F.R.D. at 433. The court concluded that, thereafter, if it determines that plaintiff's mental competency remains at issue, then it would appoint a psychiatrist to conduct a mental examination. *Id.*

[4] We find that under *W. Va. R. Civ. P.* 17(c), whenever an infant, incompetent person, or convict has a duly qualified representative, such as a guardian, curator, committee or other like fiduciary, such representative may sue or defend on behalf of the infant, incompetent person, or convict. If a person under any disability does not have a duly qualified representative he may sue by his next friend. The court shall appoint a discreet and competent attorney at law as guardian ad litem for an infant, incompetent person, or convict not otherwise represented in an action, or the court shall make such

other order as it deems proper for the protection of any person under disability.

[5] Where a substantial question exists regarding the mental competency of a party not otherwise represented to proceed with the litigation presently before the court, the court may, where there is good cause shown, require the party to undergo a mental examination in order to determine whether a guardian ad litem should be appointed to protect the party's interests pursuant to *West Virginia Rule of Civil Procedure* 17(c).

[6] In this case, the circuit court found there to be good cause shown for appointment of a competent psychiatrist to examine petitioner to ascertain her capacity to understand the meaning and effect of the litigation she has instituted. *See Donnelly v. Parker*, 486 F.2d 402, 407 (D.C.Cir.1973). We agree.

The circuit court had before it numerous pleadings in which petitioner accused various defendants of conspiring to deprive her of her constitutional right to a trial by jury with regard to the $7,000 judgment against her for unpaid legal fees. Petitioner has sued federal and circuit court judges, lawyers and clerks of court, some more than once, who have had some connection to her lawsuits. Petitioner vehemently insists that they are all participants in the constitutional conspiracy against her.

Petitioner's litigious behavior has cost her her home, which was sold to satisfy the $7,000 judgment and from which she now faces ejectment. Moreover, her perceived deprivation of her right to due process has also resulted in monetary sanctions against her in excess of $50,000.

It is clear to this Court that petitioner either refuses to accept or is unable to understand the meaning and effect of the legal proceedings she has instituted. We find that a substantial question exists regarding petitioner's mental competency to proceed with the litigation she has instituted in the Circuit Court of Morgan County and that good cause was shown to warrant the circuit court's April 8, 1996 order requiring petitioner to undergo a mental examination in order to determine whether a guardian ad litem

should be appointed to protect her interests pursuant to Rule 17(c).

## IV.

■ As indicated above, the circuit court's April 8, 1996 order directs the appointed psychiatrist, following examination of petitioner, to

report back to the Court within 30 days of the date of this order his findings as to the concerns of the Court heretofore stated. Concomitantly therewith, [the appointed psychiatrist] shall transmit a copy of this report to all parties hereto. Should [the appointed psychiatrist] fail to do so the Clerk of the Court is authorized and ordered to provide a copy of [the] report to any party hereto requesting same.

In syllabus point 1 of *State v. Simmons,* 172 W.Va. 590, 309 S.E.2d 89 (1983), this Court held: "W. Va.Code, 27–3–1(a), provides for confidentiality of communications and information obtained in the course of treatment and evaluation of persons who may have mental or emotional conditions or disorders, subject to the exceptions set out in W. Va.Code, 27–3–1(b)."

*W. Va.Code,* 27–3–1(a) [1977] expressly provides that "[c]ommunications and information obtained in the course of treatment or evaluation of any client or patient shall be deemed to be 'confidential information[.]' " *Id.,* in relevant part.

*W. Va.Code,* 27–3–1(b)(3) [1977], one of the exceptions to the confidentiality provision of *W. Va.Code,* 27–3–1(a) [1977], provides that such confidential information may be disclosed "[p]ursuant to an order of any court based upon a finding that said information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section[.]"

The public policy underlying the nondisclosure of such confidential information "is to enhance communications and effective treatment and diagnosis by protecting the patient/client from the embarrassment and humiliation that might be caused by the disclosure of information imparted during the course of consultation." Syl. Pt. 2, in rele-

vant part, *State v. Roy,* 194 W.Va. 276, 460 S.E.2d 277 (1995).

Clearly, the appointed psychiatrist's report of petitioner's mental examination will be critical to the circuit court's determination of whether a guardian ad litem should be appointed to protect petitioner's interests in the underlying litigation. Thus, it is necessary that the circuit court receive a copy of the psychiatrist's report.

Our concern is with that portion of the circuit court's order directing the appointed psychiatrist to transmit copies of his report to the respondents herein. As indicated above, under *W. Va.Code,* 27–3–1(b)(3) [1977], such confidential information may not be disclosed unless and until the circuit court finds "that said information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section." The circuit court has obviously not yet received the appointed psychiatrist's report regarding petitioner's mental competence to proceed with the underlying litigation. Not until he receives such report will he be able to determine whether, under *W. Va.Code,* 27–3–1(b)(1) [1977], the information therein should be disclosed to respondents as being sufficiently relevant to the proceeding before it to outweigh the importance of maintaining the confidentiality established by *W. Va. Code,* 27–3–1 [1977].

■ Accordingly, when a court orders a party to undergo a mental examination by a psychiatrist to determine whether a guardian ad litem should be appointed to protect the party's interests under *West Virginia Rule of Civil Procedure* 17(c), the court shall receive a copy of the appointed psychiatrist's report of such examination. Pursuant to *W. Va.Code,* 27–3–1(b)(3) [1977], the court may release such report only if it finds that it is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by *W. Va.Code,* 27–3–1(a) [1977].

It was, therefore, error for the circuit court to order the appointed psychiatrist to transmit copies of his report of petitioner's

mental examination to all parties in the first instance.

### V.

For the reasons discussed above, petitioner's petition for a writ of prohibition is granted as moulded. The case shall proceed below in accordance with the principles set forth in this opinion.

Writ granted as moulded.

RECHT, J., sitting by temporary assignment.